No. 68,616

THE CADLE COMPANY II, INC., *Appellee/Cross-appellant*, v.
MERWIN P. LEWIS, *Appellant/Cross-appellee.*
(864 P.2d 718)

Opinion filed December 10, 1993.

*Stuart R. Collier,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause and was on the brief for appellant.

*David J. Wood,* of Dresie, Jorgensen & Wood, P.A., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: This case involves an appeal and cross-appeal from judgments of the district court granted in an action on a promissory note secured by a real estate mortgage upon property in Sedgwick County. The plaintiff, The Cadle Company II, Inc., (Cadle) appeals from an order granting summary judgment to the defendant based upon a finding that Cadle's action was barred by the state statute of limitations. The defendant, Merwin P. Lewis (Lewis), cross-appeals from a judgment of the district court in favor of the plaintiff on the defendant's claim for statutory damages and attorney fees sought pursuant to K.S.A. 58-2309a. The Court of Appeals affirmed the district court judgments in an unpublished opinion decided March 26, 1993. We granted the petition for review filed by Cadle on the single issue of whether the state five-year statute of limitations or the federal six-year statute of limitations applies to this case. We denied the petition

for review filed by Lewis on his claim for statutory damages and attorney fees.

The facts, as they pertain to the issue of summary judgment, are uncontroverted. On July 2, 1985, Lewis executed a promissory note to the Stillwater (Oklahoma) Community Bank (Stillwater) in the amount of $82,297.64, which was secured by a mortgage on Kansas property. The note became due on October 2, 1985, but was not paid.

Stillwater was taken over by the Federal Deposit Insurance Corporation (FDIC) on or about October 25, 1986. Between April 30, 1986, and November 13, 1986, the FDIC purchased Stillwater's assets. The July 2, 1985, note was overdue at the time it was acquired by the FDIC. Cadle purchased the July 2, 1985, note and mortgage from the FDIC on October 20, 1989. Cadle and the FDIC had notice that the note was overdue.

On June 21, 1991, Cadle instituted an action in the District Court of Sedgwick County to obtain judgment on the July 2, 1985, note and to foreclose the mortgage on the Kansas property.

On July 20, 1991, Lewis made a written demand on Cadle that it enter satisfaction of the July 2, 1985, mortgage pursuant to K.S.A. 58-2309a. Cadle did not enter a satisfaction of the mortgage, and Lewis then filed a counterclaim, asking for $500 statutory damages and $11,461.46 in attorney fees.

Thereafter, Lewis filed a motion for summary judgment, contending that the action by the plaintiff was barred by the Oklahoma five-year statute of limitations. On October 3, 1991, the district court granted Lewis' motion for summary judgment, concluding that Cadle's foreclosure action was barred by the five-year statute of limitations.

Lewis' claim for damages for Cadle's refusal to enter satisfaction of the July 2, 1985, note was tried to the court and the court concluded the July 2, 1985, note was not paid by a subsequent April 22, 1986, note which had been executed by Lewis. The court further concluded that the July 2, 1985, note was not paid by virtue of the running of the statute of limitations. Judgment was accordingly entered for the plaintiff on the defendant's amended counterclaim.

Lewis appealed from the judgment denying recovery on his counterclaim, and Cadle cross-appealed from the summary judg-

ment rendered against it. The Court of Appeals affirmed the district court on both issues.

As previously stated, we granted Cadle's petition for review on the single issue of whether the state five-year statute of limitations or the federal six-year statute applied to this action.

The parties agree that the state statute of limitations would bar a claim five years from October 2, 1985, the date of default, and, if it applies, plaintiff's action is barred. However, if the six-year federal statute is applicable, then plaintiff's action was timely filed.

The general statute of limitations for actions on contract commenced by the United States, 28 U.S.C. § 2415(a) (1988), states:

"Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages *brought by the United States or an officer or agency thereof* which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . ." (Emphasis added.)

The statute of limitations for actions commenced by the FDIC as a conservator or receiver, 12 U.S.C. § 1821(d)(14)(A) (Supp. IV 1992), states:

"Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—(i) in the case of any contract claim, the longer of—(I) the 6-year period beginning on the date the claim accrues; or (II) the period applicable under State law."

It is the contention of Cadle that the district court erred in applying the five-year Oklahoma statute of limitations in this case. Cadle maintains that the appropriate limitations statute is the six-year federal statute. Cadle relies upon both the general contract statute, 28 U.S.C. § 2415(a), and the specific statute applicable to the FDIC, 12 U.S.C. § 1821(d)(14)(A). Cadle reasons that because it was assigned the note by the FDIC, it succeeded to all the rights and remedies available to the FDIC, including the six-year limitations period. Cadle contends that its position is supported by federal common law, public policy, and state and federal case law.

Lewis disagrees, pointing out that the plain language of the federal statutes clearly limits their application to the United States

and the officers and agencies thereof. It is his position that the statutes are clear and unambiguous and apply only to the parties specified in the statutes and that any extension of the statutes to cover others is unwarranted.

Much of Cadle's argument is based upon what it contends is a logical extension of the *D'Oench, Duhme* doctrine first enunciated in *D'Oench, Duhme & Co. v. F.D.I.C.,* 315 U.S. 447, 86 L. Ed. 956, 62 S. Ct. 676 (1942), and is supported by recent case law.

In *D'Oench, Duhme,* the Court held that the FDIC was immune from any defenses which were based upon secret or unrecorded agreements. The Court reasoned that the FDIC must be able to rely upon the records and books of failed financial institutions in its effort to protect the integrity of the United States banking industry. As such, the Court provided the FDIC with a broad estoppel defense to protect against fraud and misrepresentation by borrowers. *D'Oench, Duhme,* 315 U.S. at 458-60.

Eight years following the *D'Oench, Duhme* decision, Congress enacted 12 U.S.C. § 1823(e) (Supp IV 1992), which codified *D'Oench, Duhme* and broadened the already emerging doctrine. The act is broader than *D'Oench, Duhme* in its enforcement scope in that it applies to any agreement which is not in writing, not just agreements which are meant to mislead bank regulators. In addition to the writing requirement, the act requires that the agreement be executed contemporaneously with the underlying transaction, have approval by the bank's loan committee, and be documented in the bank's records. Today, both 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* decision serve as a bar to most defenses or claims which diminish or defeat the FDIC's right in an acquired asset. See *Langley v. FDIC,* 484 U.S. 86, 98 L. Ed. 2d 340, 108 S. Ct. 396 (1987). Through case law, the doctrine has been extended in various factual situations to assignees of the FDIC and other federal agencies.

While one of Cadle's arguments for application of the federal statutes of limitations is based upon extension of the *D'Oench, Duhme* doctrine, the Court of Appeals was not impressed. It stated:

"Neither the *D'Oench, Duhme* doctrine nor its codification speak to the statute of limitations.

"So far, the only other court to rule on this issue has been the Oklahoma federal district court in *Agrawal.* Although that court felt that the *D'Oench, Duhme* doctrine applied in this type of case, the holding is very questionable in light of the stated purpose of that doctrine and the fact that nothing in the federal statutes indicates that the six-year statute of limitations is available in any case other than an action by the federal government."

In addition to relying on the reasoning posited by the Court of Appeals decision, Lewis also maintains that statutes of limitation are procedural and as such are not assignable. In his brief, Lewis states the right to raise the applicable statute of limitations is a defense and belongs to the person against whom the claim is made—not to the person making the claim. However, this argument lacks merit and is simply misplaced. Cadle's argument is not grounded on the question of which party has the right to assert the applicable statute of limitations; instead, Cadle argues present case law establishes that the federal limitations period applies to an assignee of the FDIC. Here, the facts are not controverted on the particular issue before us, and the determination of which statute of limitations applies to the uncontroverted facts is purely a question of law.

At the time the Court of Appeals decision was rendered, that court was aware of only one case, *Mountain States Financial Resources v. Agrawal,* 777 F. Supp. 1550 (W.D. Okla. 1991), which had addressed the precise issue before the court. However, our research indicates at least nine cases which have addressed this issue, five of which were decided prior to the Court of Appeals decision. The Court of Appeals found the holding in *Agrawal,* the seminal case on the issue of the application of the federal statute of limitations to an assignee of the FDIC, to be "very questionable" and declined to follow the case.

The facts in *Agrawal* are essentially the same as the facts now before us. The defendants executed several promissory notes to American Exchange Bank and Trust Company of Norman, Oklahoma, which was subsequently declared insolvent. The FDIC was appointed as the defunct bank's receiver and eventually assigned the Agrawal notes to Mountain States Financial Resources Corporation. When that corporation filed suit to collect on the

defaulted notes, the defendants asserted that the claims were barred by the Oklahoma five-year limitations period. The plaintiff contended that the six-year federal limitations period under 12 U.S.C. § 1821(d)(14)(A) controlled. The United States District Court for the Western District of Oklahoma disposed of the argument in short order, stating:

"Defendants argue that the six-year limitations period applies only to actions brought by the FDIC, not the FDIC's assignees. Defendants offer no authority for this argument, other than their plain reading of the statute. They do not dispute that had the FDIC brought the action, the six-year limitations period would apply. An assignee stands in the shoes of the assignor, and acquires all of the assignor's rights and liabilities in the assignment. This general principle and a strong public policy require that the FDIC's assignee acquire the six-year limitations period provided by § 1821(d)(14)(A). [Citations omitted.] Thus, defendants' argument that claims against them on the notes are time-barred is without merit." 777 F. Supp. at 1552.

The court cited *D'Oench, Duhme* as one of the authorities for its holding.

Although the decision in *Agrawal* lacks any extensive discussion of the issue before the court, the case has been cited in most of the subsequent cases, the majority of which have held that the federal six-year statute of limitations does apply in actions brought by an assignee of the FDIC.

The next case to consider the issue was *Thweatt v. Jackson*, 838 S.W.2d 725 (Tex. App. 1992). The undisputed facts were stated by the court as follows:

"On January 4, 1984, Jackson executed a promissory note payable to the order of The People's National Bank of Lampasas. The note matured on May 3, 1984, and Jackson failed to pay the amount due, thereby defaulting on the note.

"On April 18, 1985, the Comptroller of the Currency closed People's National Bank and named the Federal Deposit Insurance Corporation ("FDIC") as receiver. As receiver, the FDIC became the holder and owner of Jackson's note. That same date, the FDIC, in its corporate capacity, purchased Jackson's note from the FDIC as receiver.

"On December 28, 1988, the FDIC sold Jackson's note to Thweatt. By a letter dated December 13, 1989, Thweatt made a demand on Jackson for payment of the note. Jackson did not pay; therefore, Thweatt filed this suit against Jackson on April 15, 1991." 838 S.W.2d at 726.

Jackson asserted that the action was barred by the Texas four-year statute of limitations, while Thweatt asserted the six-year federal statute controlled. The Texas Court of Appeals stated:

"[I]t is axiomatic that an assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment. [Citations omitted.] Moreover, the assignee of a debt ordinarily obtains all remedies which were available to the assignor against the debtor for the enforcement of the obligation. [Citations omitted.]

"Therefore, as an assignee of the FDIC, Thweatt obtained the FDIC's claim to the amount due on the Jackson note, as well as the FDIC's right to assert that claim in a court of law. There is no dispute that at the time it assigned the Jackson note to Thweatt, the FDIC had the right to sue Jackson on the note until April 18, 1991, by virtue of the six-year limitations period contained in section 1821. Thus, we conclude that Thweatt stood in the shoes of the FDIC and had the right to assert a claim on the promissory note to the same extent as the FDIC. Because the FDIC had until April 18, 1991, to file suit against Jackson on the note, Thweatt did too." 838 S.W.2d at 727-28.

The court then discussed the public policy argument which has developed following *D'Oench, Duhme* in support of applying the federal statute of limitations. The court stated:

"In a closely related setting, the federal courts have allowed assignees to step into the shoes of the FDIC and benefit from its so-called 'super-holder-in-due-course' status granted by FIRREA, 12 U.S.C. § 1823(e) (Supp. I 1989). *See Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir. 1990); *FDIC v. Newhart,* 892 F.2d 47, 49-50 (8th Cir. 1989). In so holding, the Eighth Circuit in *Newhart* reasoned that a transferee of a note is vested with such rights as the FDIC had therein at the time of the transfer. The court also gave the following public policy rationale for its conclusion:

'In certain cases, such as the instant one, the FDIC may decide to sell returned assets after bringing suit for collection. Because these assets are usually nonperforming loans, there would be little or no incentive for prospective purchasers to acquire them if they were subject to the personal defenses of the obligors based on undisclosed agreements. If this avenue of cutting losses became unavailable to the FDIC, purchase and assumption transactions would become more expensive and thus, less likely to occur.'

*Newhart,* 892 F.2d at 50. By the same token, if assignees of the FDIC were not allowed to benefit from the six-year statute of limitations in FIR-REA, the FDIC would be forced to prosecute all notes for which the state statute of limitations had run, because such claims would be worthless to anyone else. Such a result would be contrary to the policy of ridding the federal system of failed bank assets." 838 S.W.2d at 728.

Other cases involving similar factual circumstances which hold that the federal statute of limitations controls in an action by an assignee of a federal agency include: *F.D.I.C. v. Bledsoe,* 989 F.2d 805 (5th Cir. 1993); *White v. Moriarty,* 15 Cal. App. 4th 1290, 19 Cal. Rptr. 2d 200 (1993); *Central States Resources v. First Nat. Bank,* 243 Neb. 538, 501 N.W.2d 271 (1993); *Jon Luce Builder v. First Gibraltar Bank,* 849 S.W.2d 451 (Tex. App. 1993); *Pineda v. PMI Mortg. Ins. Co.,* 843 S.W.2d 660 (Tex. App. 1992).

In *Bledsoe,* the issue again involved whether an action by the assignee of the FDIC was governed by the federal six-year statute of limitations or the shorter state statute. The United States District Court for the Northern District of Texas held the action was barred by the Texas four-year statute of limitations. On appeal, the Fifth Circuit reversed the District Court and held the federal six-year statute was applicable. Bledsoe argued that the language of the federal statutes was clear and did not extend to assignees of a federal agency. After a discussion of federal common law to the effect that "an assignee stands in the shoes of his assignor," the extension of the *D'Oench, Duhme* doctrine, and public policy, the court stated:

"We hold that assignees of the FDIC and the FSLIC are entitled to the same six year period of limitations as the FDIC and the FSLIC. Transferring the federal six year statute of limitations from the FDIC and FSLIC to its assignees is consistent with the common law of assignment, furthers Congressional policy, and is supported by the cases extending the *D'Oench, Duhme* doctrine to private assignees." 989 F.2d at 811.

In *White v. Moriarty,* the plaintiff as assignee of the FDIC asserted the federal six-year statute applied, while the debtor defendant argued for the shorter state statute. In finding that the federal statute controlled, the court stated:

"The six-year statute of limitations located in 12 United States Code section 1821(d)(14)(A) gives the FDIC the longer of six years or the applicable state statute of limitations in which to bring an action on a contract claim. Moriarty does not contest the applicability of section 1821 to the FDIC but argues that an assignee of the FDIC is bound by the state limitation period.

. . . .

"In *Mountain States Financial Resources v. Agrawal, supra,* 777 F. Supp. 1550, the court confronted the precise issue presented in the instant case and found that the six-year federal statute of limitations passed to the as-

signee with an assignment by the FDIC. (*Id.,* at p. 1552.) The *Mountain States* court noted that an assignee generally 'stands in the shoes of the assignor' and referenced the strong public policy encouraging facilitation of the FDIC's role. . . .

"Despite the paucity of case law on the issue, we agree with the courts holding that the FDIC's assignee is entitled to the benefit of the federal statute of limitations in enforcing notes from failed banks." 15 Cal. App. 4th at 1297-98.

The only cases we have found which do not follow the weight of authority as evidenced by the foregoing cases are *Tivoli Ventures, Inc. v. Tallman,* 852 P.2d 1310 (Colo. App. 1992) *cert. granted* June 7, 1993, and *Federal Debt Management, Inc. v. Weatherly,* 842 S.W.2d 774 (Tex. App. 1992). In both cases, the courts found that the federal statutes were clear and unambiguous and that the arguments based upon federal common law, public policy, or an extension of the *D'Oench, Duhme* doctrine were not applicable. The thread running through both cases was succinctly stated in *Tallman:* "If statutory language is plain and its meaning clear, the statute must be applied as written." 852 P.2d at 1313.

Thus, we are faced with a case of first impression in which there is respectable authority for each party's position. Under the circumstances, we conclude that the clear weight of authority, and the more acceptable reasoning, are on the side of the cases following the lead of *Agrawal.* We hold, for the various reasons set forth in the cases cited, that the action filed by Cadle, as assignee of the FDIC, is controlled by 12 U.S.C. § 1821(d)(14)(A), the federal six-year statute of limitations, and its action was timely filed.

One other collateral issue needs to be mentioned briefly. Throughout this proceeding, the question of whether Cadle had the status of a holder in due course has been raised. Considering the posture of this case before the district court and on appeal, such issue is of no consequence. Whether Cadle is a holder in due course is not controlling or relevant as to which statute of limitations applies in this case. If the state statute was applicable, the action was barred regardless of whether Cadle was a holder in due course, and if the federal statute controls, as we have determined, then Cadle had the right to bring this action even if not a holder in due course. Our determination of the appro-

priate statute of limitations does not hinge on the status of Cadle. Such status may become an issue on remand if the defendant asserts personal defenses that might be available if Cadle is not a holder in due course. We conclude that the district court comments to the effect that Cadle was not a holder in due course were merely gratuitous and not binding upon further consideration of this case by the trial court. If the issue becomes relevant in further proceedings, it will be for the trial court to determine based upon the facts then before it.

The judgments of the Court of Appeals and the district court that plaintiff's action was barred by the five-year statute of limitations are reversed, and the case is remanded to the district court for further proceedings on plaintiff's cause of action. Other issues determined by the Court of Appeals, and not reviewed by this court, remain as determined by the Court of Appeals.