**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FEDERAL FINANCIAL COMPANY,
Plaintiff-Appellant,

v.

MICHAEL T. HALL, Trustee; MICHAEL
T. HALL,
Defendants-Appellees.

No. 96-1143

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CA-95-1600-A)

Argued: January 31, 1997

Decided: March 4, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Reversed by published opinion. Judge Motz wrote the opinion, in
which Judge Niemeyer concurred. Judge Murnaghan wrote a concur-
ring opinion.

_____

**COUNSEL**

**ARGUED:** John Edward Rinaldi, WALSH, COLUCCI, STACK-
HOUSE, EMRICH & LUBELEY, P.C., Woodbridge, Virginia, for
Appellant. Robert J. Zelnick, SZABO, ZELNICK & ERICKSON,
P.C., Woodbridge, Virginia, for Appellees. **ON BRIEF:** Sean P.
McMullen, WALSH, COLUCCI, STACKHOUSE, EMRICH &
LUBELEY, P.C., Woodbridge, Virginia, for Appellant.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal presents a single issue: whether, as a matter of federal law, the statute of limitations applicable to the Resolution Trust Corporation when it acts as receiver also applies to its assignees.

I.

The relevant facts are simple. Michael T. Hall, Trustee, executed a promissory note for $250,000.00 to Piedmont Federal Savings Bank (Piedmont) in Virginia. Hall failed to pay the note when it fell due on August 9, 1990. In October 1992, the Office of Thrift Supervision placed Piedmont into receivership and appointed the Resolution Trust Corporation (RTC) as its receiver. In late 1994 or early 1995, RTC assigned Hall's note to Federal Financial Corporation (FFC), an Illinois partnership. In November 1995, after Hall had refused to pay, FFC filed this diversity action in the Eastern District of Virginia. Hall moved to dismiss, asserting that Virginia's five-year statute of limitations to enforce the payment of a note had expired in August 1995, five years after this note's maturity date.

The parties do not dispute that if the RTC had retained the note, the applicable statute of limitations would have allowed the RTC six years from the date of receivership in which to bring its action. See 12 U.S.C.A. § 1821(d)(14) (West 1989 & Supp. 1996). As the RTC's assignee, FFC claimed that it should receive the benefit of the longer federal statute of limitations applicable to claims brought by the RTC. Unpersuaded, the district court dismissed the claim. Relying on its prior decision in WAMCO, III, Ltd. v. First Piedmont Mortgage Corp., 856 F. Supp. 1076 (E.D. Va. 1994), the court determined that a five-year state statute of limitations governing contract actions applied and barred FFC's cause of action. See Va. Code Ann. § 8.01-246(2) (Michie 1992). Although we agree with the district court that federal law does not govern the limitations period of assignees of the RTC, because of a recent clarification in state law we must nonetheless reverse.

2

II.

Our review of this legal question is de novo. See United States v. Han, 74 F.3d 537, 540 (4th Cir.), cert. denied 116 S. Ct. 1890 (1996).

Congress enacted the statute of limitations at issue here as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183 (1989). The statute provides, in relevant part:

> (14) Statute of limitations for actions brought by conservator or receiver
>
> (A) In general
>
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be--
>
> (i) in the case of any contract claim, the longer of--
>
> (I) the 6-year period beginning on the date the claim accrues; or
>
> (II) the period applicable under State law;
>
> . . .
>
> (B) Determination of the date on which a claim accrues
>
> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of--
>
> (i) the date of the appointment of the Corporation as conservator or receiver; or

3

            (ii) the date on which the cause of action
            accrues.

12 U.S.C.A. § 1821(d)(14) (West 1989 & Supp. 1996). While the statute mentions rights of "the Corporation," elsewhere defined as the FDIC, another part of FIRREA gives the RTC the same rights and powers in this context. See 12 U.S.C.A.§ 1441a(b)(4)(A) (West Supp. 1996).

Section 1821(d)(14) is obviously silent with respect to its application to the RTC's assignees. Hall asserts that since the plain language of the statute indicates that Congress took no position on whether assignees also receive the benefit of this federal statute of limitations, assignees are bound by the state statute of limitations originally governing the instrument.

FFC, relying on the overwhelming majority of the state and federal decisions that have addressed the issue, maintains that state law has no place in the analysis. See FDIC v. Bledsoe , 989 F.2d 805 (5th Cir. 1993); Mountain States Fin. Resources Corp. v. Agrawal, 777 F. Supp. 1550 (W.D. Okla. 1991); N.S.Q. Associates v. Beychok, 659 So.2d 729 (La. 1995); Tivoli Ventures, Inc. v. Bumann, 870 P.2d 1244 (Colo. 1994) (en banc); Investment Co. of the Southwest v. Reese, 875 P.2d 1086 (N.M. 1994); Jackson v. Thweatt, 883 S.W.2d 171 (Tex. 1994); Cadle Co. II, Inc. v. Lewis, 864 P.2d 718 (Kan. 1993). FFC asserts, as these courts have reasoned, that "courts are to fill the inevitable statutory gaps by reference to the principles of the common law" and while the federal statute is silent, "the common law speaks in a loud and consistent voice: An assignee stands in the shoes of his assignor." Bledsoe, 989 F.2d at 810 (citing, among other sources, 6 Am. Jur. 2d Assignments § 102 (1963) and Restatement (Second) of Contracts § 336 cmt. b, illus. 3 (1979)).

Even WAMCO III, Ltd. v. First Piedmont Mortgage Corp., 856 F. Supp. 1076 (E.D. Va. 1994), on which the district court relied, accepted this basic approach. Its holding differs from the majority view only because the WAMCO court read the common law differently. Under the WAMCO analysis, the RTC's right to the six-year statute of limitations is "personal to the assignor" and, therefore, under general common law principles, not assignable. WAMCO, at

4

1086 (citing 6A C.J.S. Assignments § 76 (1975)). Thus appellant, FFC, and appellee, Hall, share a reliance on general common law principles.

In view of recent Supreme Court guidance, we believe that reliance is misplaced.

III.

The Supreme Court has recently emphasized that cases requiring federal common law rules of decision are "few and restricted." O'Melveny & Myers v. FDIC, 114 S. Ct. 2048, 2055 (1994) (citation omitted). Courts should create federal common law rules only "where there is a significant conflict between some federal policy or interest and the use of state law." Id. (citation omitted); Atherton v. FDIC, 117 S. Ct. 666, 670 (1997). See also Resolution Trust Corp. v. Maplewood Invs., 31 F.3d 1276, 1293-94 (4th Cir. 1994) (following Virginia law, not federal common law, in determining whether RTC is a holder in due course).

The technique of using common law principles to "fill the inevitable statutory gaps" finds its roots in Justice Jackson's concurring opinion in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 468-72 (1942) (Jackson, J., concurring). Justice Jackson suggested that federal courts should "make [their] own law from materials found in common law sources." But O'Melveny summarily rejected the FDIC's reliance on "[g]enerally [a]ccepted [c]ommon [l]aw [p]rinciples." O'Melveny, at 2053. Furthermore, the D'Oench, Duhme majority (unlike Justice Jackson's concurrence) based its narrow federal rule of decision on strong "federal policy evidenced in the [Federal Reserve] Act to protect [the FDIC], a federal corporation, from misrepresentations . . . ." D'Oench, Duhme, 315 U.S. at 459. Thus, the D'Oench, Duhme holding may well fit into the "few and restricted" cases that the Supreme Court in O'Melveny held do require federal common law rules of decision.

Here, in contrast, there is no "significant conflict" between a federal policy and the use of state law. Admittedly, allowing a state-by-state determination of whether § 1821(d)(14) applies to the RTC's assignees would disadvantage the federal government by reducing the

5

value and marketability of the RTC's asset pool. But in O'Melveny, the Court found strikingly similar fears did not merit a federal common law rule of decision. O'Melveny, 114 S. Ct. at 2055. Specifically, the court held that state law determined whether a failed S&L's knowledge of its officers' fraudulent activity could be imputed to the FDIC as receiver.

In refusing to turn to federal common law, O'Melveny also noted that "[t]he rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred." O'Melveny, 114 S. Ct. at 2055 (emphasis added). In the case at hand, we are addressing conduct of assignees of the government agency receiver. These assignees are even one step further removed from "the primary conduct of the United States" than the government agency receiver whose role the O'Melveny court found to be too attenuated. We therefore conclude that no federal policy presents a sufficient justification for a federal common law rule of decision applying § 1821(d)(14) to assignees of the RTC.

Nor do we find persuasive the attempt of Bledsoe and its progeny to analogize to the body of law that has evolved from the majority decision in D'Oench, Duhme & Co.. The common law rule created in D'Oench, Duhme protects the FDIC from secret agreements made by a failed bank, a doctrine later codified in 12 U.S.C. § 1823(e). See 12 U.S.C.A. § 1823(e) (West Supp. 1996) ("No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section . . . shall be valid against the Corporation unless such agreement (A) is in writing . . .."). We and several other Courts of Appeals have held that the D'Oench, Duhme rule protects the FDIC's assignees as well, even though§ 1823(e) is silent with regard to assignees. See, e.g. Carteret Sav. Bank v. Compton, Luther & Sons, 899 F.2d 340 (4th Cir. 1990); Newton v. Uniwest Fin. Corp., 967 F.2d 340, 347 (9th Cir. 1992); Porras v. Petroplex Sav. Ass'n, 903 F.2d 379 (5th Cir. 1990); FDIC v. Newhart, 892 F.2d 47 (8th Cir. 1989). But see Motorcity of Jacksonville Ltd. v. Southeast Bank, 83 F.3d 1317 (11th Cir. 1996) (en banc), vacated sub nom. Hess v. FDIC, 117 S. Ct. 760 (1997) (mem.) (vacating for reconsideration a case holding that the D'Oench, Duhme common law doctrine

6

could exist beyond the limits of § 1823(e)). FFC argues that when FIRREA was enacted, Congress knew courts applied§ 1823(e) to assignees and assumed that courts would take the same approach in interpreting § 1821(d)(14). According to FFC, making the new statute of limitations expressly applicable to assignees would have been surplusage.

Undoubtedly, "Congress is presumed to enact legislation with knowledge of the law . . . ." United States v. Langley, 62 F.3d 602, 605 (4th Cir. 1995) (en banc), cert. denied 116 S. Ct. 797 (1996) (citations omitted). In Langley, we applied this principle to determine which elements of a criminal offense had to be performed "knowingly." There, we employed Congress' presumed knowledge of the law to untangle the grammar of a set of statutory provisions. Here, we would be using this presumption to extend a benefit Congress specially created for federal agencies when they act as receivers or conservators to a party unmentioned in the statute. In view of recent Supreme Court pronouncements, we cannot justify this leap.

We recognize the strong policy reasons for a uniform federal rule extending § 1821(d)(14) to assignees of the RTC. And "[n]o one doubts the power of Congress to legislate rules for deciding cases like the one before us." Atherton, 117 S. Ct. at 670. However, we must remain mere observers in that process, for "when the terms of a statute are clear, . . . courts are `not free to replace . . . [that clear language] with an unenacted legislative intent'" United States v. Morison, 844 F.2d 1057, 1064 (4th Cir. 1988) (alteration in original) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 453 (1987) (Scalia, J., concurring)). "Whether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts." Atherton, 117 S. Ct. at 670 (citing Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 68 (1966). See also O'Melveny, at 2054 (refusing to "adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed").

IV.

Accordingly, we look to state law, here Virginia law, to determine the statute of limitations governing the rights of assignees of the RTC. See O'Melveny, 114 S. Ct. at 2053-54 (finding "matters left unad-

7

dressed in [FIRREA] are presumably left subject to the disposition provided by state law"); see also FDIC v. Houde, 90 F.3d 600, 604 (1st Cir. 1996) (same).

After the district court decided this case, but before it was argued before us, Virginia's highest court addressed precisely this issue. In Union Recovery Ltd. Partnership v. Horton, 477 S.E.2d 521 (Va. 1996), the Supreme Court of Virginia held that assignees of the RTC do receive the benefit of § 1821(d)(14). See also National Enterprises, Inc. v. Moore, 948 F. Supp. 567 (E.D. Va. 1996) (relying on Horton to find § 1821(d)(14) applicable to assignees under Virginia law). Thus, in this case, state law happens to bring us by a different path to the same result that the Bledsoe cases reach through application of federal common law. But this may not always be so and when state and federal law diverge, we believe we must follow state law, unless and until Congress or the Supreme Court directs otherwise.

Therefore, applying Virginia law, we hold that the RTC's six year statute of limitations and later date of accrual passed to FFC with FFC's purchase of Hall's note. For this reason, FFC's claim against Hall was not time-barred, and the district court's decision must be

REVERSED.

MURNAGHAN, Circuit Judge, concurring:

The question before the Court is whether a six-year statute of limitations applies to claims brought by an assignee of a promissory note held by the RTC. Since I believe that Virginia law clearly holds that the six-year statute of limitations period applies to assignees, I would not reach the issue of whether the conclusion would be the same under FIRREA absent clearly established state law.

In the instant case, Hall asserts that the plain language of the statute indicates that Congress took no position on whether assignees should receive the six-year statute of limitations period provided to the RTC, and the Court should therefore look to state law to determine the statute of limitations period. FFC argues that 1) the statute grants a six-year statute of limitations to assignees of the RTC;* 2) common law

_____

*FFC concedes that the statute is silent regarding this matter. However, they argue that the statute must be read as to effectuate the legisla-

8

principles generally establish that the six-year statute of limitations applies to assignees; and 3) applying Virginia law, the six-year statute of limitations applies. Union Recovery Ltd. Partnership v. Horton, 477 S.E.2d 521 (Va. 1996).

As noted in the majority opinion, the overwhelming majority of state and federal decisions have interpreted the federal statute to grant to the assignee a six-year statute of limitations. See e.g. FDIC v. Bledsoe, 989 F.2d 805 (5th Cir. 1993); Mountain States Fin. Resources Corp. v. Agrawal, 777 F. Supp. 1550 (W.D. Okla. 1991); N.S.Q. Associates v. Beychok, 659 So.2d 729 (La. 1995); Tivoli Ventures, Inc. v. Bumann, 870 P.2d 1244 (Colo. 1994) (en banc); Investment Co. of the Southwest v. Reese, 875 P.2d 1086 (N.M. 1994); Jackson v. Thweatt, 883 S.W.2d 171 (Tex. 1994); Cadle Co. II, Inc. v. Lewis, 864 P.2d 718 (Kan. 1993). However, in the instant case, there is no need to interpret the federal statute. Virginia law clearly holds that an assignee stands in the shoes of the assignor, and that the assignee of a note from the RTC is entitled to the longer six-year statute of limitations.

Since I believe it is unnecessary for the Court to determine whether the federal statute applies, I concur as to Part IV of the opinion and concur in the result.

_____

tive intent. They argue that Congress is presumed to enact legislation with knowledge of the law and that a "newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construct." United States v. Langley, 62 F.3d 602, 605 (4th Cir. 1995) (en banc) (quoting Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir. 1983), cert. denied, 465 U.S. 1012 (1984)). FFC argued that the statute must be read in the context of Congress's understanding that an assignee stands in the shoes of an assignor.