<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 96-2292

              BECKLEY CAPITAL LIMITED PARTNERSHIP,

                     Plaintiff, Appellant,

                               v.

                   ELIZABETH ANN DiGERONIMO,
       Executrix of the Estate of Anthony L. DiGeronimo,

                      Defendant, Appellee.
                     ____________________  

No. 98-1464

                   ELIZABETH ANN DiGERONIMO,
       Executrix of the Estate of Anthony L. DiGeronimo,

                     Plaintiff, Appellant,

                               v.

           FEDERAL DEPOSIT INSURANCE CORPORATION and
              BECKLEY CAPITAL LIMITED PARTNERSHIP,

                     Defendants, Appellees.

         APPEALS FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF NEW HAMPSHIRE

        [Hon. James R. Muirhead, U.S. Magistrate Judge]
        [Hon. Joseph A. DiClerico, U.S. District Judge]
                                 

                             Before

                   Selya, Boudin and Lipez,
                                
                       Circuit Judges.
                                
                                
                                
                                
    Thomas J. Pappas, with whom Stephanie A. Bray, Thomas W.
Aylesworth and Wiggin & Nourie, P.A. were on brief for Elizabeth
Ann DiGeronimo.
    Frank P. Spinella, Jr. with whom Hall, Morse, Anderson, Miller
& Spinella, P.C. was on brief for Beckley Capital Limited
Partnership.
    Ashley Doherty, Counsel, Federal Deposit Insurance
Corporation, with whom Ann S. DuRoss, Assistant General Counsel,
Colleen J. Boles, Senior Counsel, Steven A. Solomon and Bachus,
Meyer, Solomon, Rood & Branch were on brief for Federal Deposit
Insurance Corporation.

July 19, 1999

                                
                               

 BOUDIN, Circuit Judge.  Before us are two appeals arising
out of two different district court cases, which both stem from a
single 1988 bank loan.  On August 15, 1988, Biotech Realty Trust
("Biotech") obtained a loan from the Bank of New England-Worcester
and executed a note in favor of the bank in the principal amount of
$700,000.  To secure the note,  Biotech executed a mortgage in
favor of the bank on a commercial building in Leominster,
Massachusetts; and Anthony DiGeronimo, as did two other persons,
executed a personal guaranty of Biotech's obligations under the
note.
 On January 6, 1991, the bank failed and the Federal
Deposit Insurance Corporation ("FDIC") became its receiver.  
Thereafter, Biotech defaulted on the note, and RECOLL Management
Corporation ("RECOLL"), which administered certain assets of the
bank on behalf of the FDIC, began foreclosure proceedings in
Massachusetts state court.  On March 16, 1994, RECOLL agreed with
Biotech and the guarantors that the building securing the note
would be sold to a tenant, that the proceeds would be applied to
reduce the outstanding balance on the note, and that the guarantors
would be released if they made certain disclosures as to their own
financial status.
 Although the other guarantors apparently declined to make
the required disclosures, Anthony DiGeronimo did make them.  In
addition, he contributed just over $10,000 to ensure that the net
amount received by the FDIC on the sale of the building to the
tenant met the minimum figure that the FDIC had set as a condition
of the overall transaction.  Although RECOLL told Anthony
DiGeronimo that a written release to him would be forthcoming, no
such release was ever delivered.
 After the March 1994 sale, a balance remained due on the
note (apparently the balance was then about $195,000).  On June 9,
1994, the FDIC sold the note and the guaranty to Beckley Capital
Limited Partnership ("Beckley") as part of a package of assets that
the FDIC had inherited as receiver of the bank.  On July 23, 1994,
Anthony DiGeronimo died, and his wife, Elizabeth Ann DiGeronimo,
became executrix of the estate.  New Hampshire requires that claims
against an estate be filed in court within one year of decedent's
death, N.H. Rev. Stat. Ann.  556:5, and the one-year period ended
without any suit being brought by Beckley against the estate of
Anthony DiGeronimo on the guaranty.
 Nevertheless, after the expiration of the one-year
deadline, Beckley sued Elizabeth as executrix of the DiGeronimo
estate on April 11, 1996, on the ground that the estate remained
liable under the guaranty for the outstanding balance on the note.  
When the estate asserted the one-year state statute of limitations
(along with other defenses), Beckley argued that it was entitled to
the much longer six-year statute of limitations available to the
FDIC under the Financial Institutions Reform, Recovery, and
Enforcement Act ("FIRREA"), 12 U.S.C.  1821(d)(14).  In September
1996, the magistrate judge, acting under 28 U.S.C.  636(C),
concluded on cross-motions for summary judgment that Beckley was
governed by the one-year statute and dismissed the case.  Beckley
Capital L.P. v. DiGeronimo, 942 F. Supp. 728 (D. N.H. 1996).  In
No. 96-2292, Beckley appeals from that decision.   
 In March 1997, Elizabeth DiGeronimo brought a separate
suit in the federal  district court in New Hampshire, seeking
specific performance against the FDIC, or in the alternative
against Beckley, to require  delivery of the release assertedly
promised by RECOLL at the time of the March 16, 1994, transaction.  
Although this might seem redundant given the dismissal of Beckley's
action, Beckley was not only appealing from that dismissal but also
seeking in state court to obtain an equitable extension of the one-
year deadline for suing the estate.  N.H. Rev. Stat. Ann.  556:28.
   Both defendants moved for summary dismissal of the
injunction action.  In a decision filed on March 23, 1998, the
district court dismissed the claim against the FDIC on the ground
that it was barred by a different provision of FIRREA, 12 U.S.C.  
1821(d)(13)(D).  The court also dismissed the estate's claim
against Beckley on the ground that it was effectively a compulsory
counterclaim that the estate should have asserted in the earlier
lawsuit by Beckley to recover on the guaranty.  See Fed. R. Civ. P.
13(a).  The DiGeronimo estate appeals this decision in No. 98-1464.  
 We begin with Beckley's appeal in No. 96-2292 in which it
contends that, as the FDIC's assignee, it is not bound by the state
law requiring that suits against an estate be brought within one
year.  Congress enacted a special statute of limitations applying
"with regard to any action brought by the [FDIC] as conservator or
receiver."  12 U.S.C.  1821(d)(14)(A).  For contract claims, the
FDIC has "the longer of (I) the  6-year period beginning on the
date the claim accrues; or (II) the period applicable under State
law."  Id.  1821(d)(14)(A)(i).  Further, the statute says that "a
claim accrues" for purposes of subsection (A) on "the later of (i)
the date of the appointment of the [FDIC] as conservator or
receiver; or (ii) the date on which the cause of action accrues."  
Id.  1821(d)(14)(B).
 At first glance, one might think that Beckley's position
is unaffected by this statute since the statute's plain language is
directed to suits by the FDIC (and only in its capacity as a
conservator or receiver), and Beckley's suit is not one by the
FDIC.  Nothing in the statute says that someone acquiring a
contract right previously held by the FDIC should get the benefit
of the FDIC's special statute of limitations, nor is there any
indication that Congress considered the issue.  Thus, neither the
plain language of the statute nor any directly pertinent
legislative history supports Beckley's position.
 Nevertheless, a number of circuits, and some district and
state courts as well, have held that one who purchases an
obligation owned by the FDIC as conservator or receiver is entitled
to take advantage of the special six-year statute of limitations,
and no circuit appears to directly hold to the contrary.  But cf.
Federal Fin. Co. v.  Hall, 108 F.3d 46 (4th Cir.), cert. denied,
118 S. Ct. 157 (1997) (dictum).  This outcome is usually made to
rest on either or both of two propositions:  the common law axiom
that assignees "stand in the shoes" of assignors, e.g., Bledsoe,
989 F.2d at 810, and the federal policy interest in promoting the
marketability of the FDIC's assets derived from failed banks, e.g.,
id. at 18.   
 The axiom is fairly weak support for the result.  It is
true that courts often say that assignees stand in the shoes of
assignors and are thus entitled to whatever rights the assignor had
vis--vis the transferred asset.  See 6 Am. Jur. 2d Assignments  
102 (collecting cases).  But the proposition is too abstract and
has too many exceptions to be very useful in a case like this one.  
Indeed, sometimes an assignee may get more than the assignor had,
notably a good faith purchaser of a negotiable instrument, who may
take free of certain defenses that could have been asserted against
the assignor.  E.g., U.C.C.  3-302, 3-305.  And it is pretty easy
to imagine procedural "rights" peculiar to an assignor that would
not readily be transferrable to the assignee.
 The "stand in the shoes" axiom makes most sense when it
is directed to defining the bundle of substantive rights that
comprise the asset that has been transferred, see, e.g., Newton v.
Fin. Corp., 967 F.2d 340, 347 (9th Cir. 1992) (extending to FSLIC
assignee the protections of D'Oench, Duhme & Co. v. FDIC, 315 U.S.
447 (1942)), and it makes less sense (at least as an automatic
principle) when one is concerned with advantages or disabilities
that are peculiar to the status of either the assignor or the
assignee. Such issues ought to be decided by the usual criteria
(e.g., statutory language, pertinent policy) rather than by
shibboleths.
 The policy arguments relied upon by a number of the
courts that have given the assignee the benefit of the FDIC's
statute of limitations do have some weight.  In a nutshell, the
language and background of the FIRREA statute show that Congress
was attempting to aid the FDIC in its role as receiver or
conservator in coping with a wave of bank failures and huge
potential liabilities for the taxpayers.  To this end, FIRREA is
filled with provisions that vary ordinary contract rules in the
FDIC's favor.  See, e.g., Lawson v. FDIC, 3 F.3d 11, 13 (1st Cir.
1993). The special FIRREA statute of limitations (most importantly,
the special definition of accrual)  reflects this approach.   
 The argument for extending this particular break to
assignees of FDIC owned notes, in the teeth of statutory language
that does not mention assignees, is a practical one.  Congress
perhaps thought that the FDIC would itself sue on notes payable to
failed banks, but the FDIC finds it convenient to sell these notes
in bulk; and marketability may be enhanced if the private purchaser
can use the longer statute of limitations.  The clearest case is
where the time to sue under normal statutes of limitation has
already run by the time the FDIC makes the sale; the note would be
essentially valueless to anyone other than the FDIC unless the
benefit of the FIRREA statute of limitations "ran" with the note.
 Granting that the policy interest is a real one, the case
is very close.  A principal task of federal courts is to implement
imperfect federal statutes.  See Versyss Inc. v. Coopers and
Lybrand, 982 F.2d 653, 654 (1st Cir. 1992).  But it is one thing to
resolve ambiguities in accordance with general policy and
altogether another to extend a statute to a new class of
beneficiaries that Congress did not even mention.  Thus, we are not
unsympathetic to the dictum in the Fourth Circuit expressing its
reluctance to read the FIRREA statute as covering assignees.  See
Hall, 108 F.3d at 50 (allowing suit based on state law).
 Nevertheless, virtually all of the circuits that have
decided the issue on the merits have allowed the purchaser to make
use of the FDIC's special statute of limitations, and we are loathe
to create a conflict in uniform authority unless there is no
choice.  Statutory language should never be read without attention
to purpose even when the language seems clear on its face, see
National Labor Relations Bd. v. Lion Oil Co., 352 U.S. 282, 288
(1957); and while the majority reading is still something of a
stretch, one can also view the outcome as a court-made "federal
common law" rule as to when a right given to the FDIC should be
treated as "running" with the assignment.  See Chemerinsky, Federal
Jurisdiction  6.3 (3d ed. 1999).
 This conclusion might appear to resolve the case in
Beckley's favor but it does not.  Both the magistrate judge and the
DiGeronimo estate assume that the FDIC statute of limitations can
be utilized by Beckley, but each says that the New Hampshire
statute still stands as an obstacle to the claim.  Both the
estate's position on appeal and that of the magistrate judge rest
on the premise that the New Hampshire one-year statute is not
"really" a statute of limitation and therefore is not in conflict
with (and overridden by) the longer six-year FIRREA statute.
 Although there is something to be said on both sides of
the matter, compare RTC v. Liebert, 1995 U.S. Dist. LEXIS 8492, at
*2 (C.D. Cal. 1994), with Davis v. Britton, 729 F. Supp. 189, 191
(D.N.H. 1989), we think that the precise characterization of the
New Hampshire statute does not matter here.  Yes, the policy behind
the one-year statute differs from the usual statute-of-limitations
concern with stale claims and faded memory, but the underlying
thrust is the same:  to prevent suits from being brought after a
specific period of time.  Under standard "conflict" preemption
doctrine underpinned by the Supremacy Clause, Cipollone v. Ligget
Group, Inc., 505 U.S. 504, 516 (1992), this enactment overrides any
one-year limitation period imposed under state law.
 Nevertheless, we agree that Beckley's suit is barred by
the one-year New Hampshire statute.  If the FDIC were suing, the
FIRREA statute would allow it to do so despite the one-year
statute, simply because Congress would be taken to have settled the
matter.  However, Congress did not purport to decide that an
assignee should be entitled to the same benefit and, to the extent
assignees are allowed to do so, it is for reasons of federal
policy.  No reason exists to extend this special benefit beyond the
point where it serves the federal policy; and it does not do so
here.  Cf. Llewellyn, The Bramble Bush 189 (1960).
 We have already noted, and accepted, the policy rationale
for allowing the assignee the benefit of the FIRREA statute of
limitations--namely, that in some situations it is essential to
make obligations held by the FDIC marketable (and the debtor's
plight is less sympathetic since the FDIC could itself still sue).  
But this policy rationale has real force, or at least most force,
only where an obligation inherited by the FDIC from a failed bank
is already in default (or nearly so) at the time that the FDIC re-
assigns it; if not, the assignee can enforce it readily enough
under an ordinary statute of limitations.
 Indeed, as the Fifth Circuit cogently pointed out in
Cadle Co. v. 1007 Joint Venture, 82 F.3d 102 (5th Cir. 1996), the
rationale for extending the FIRREA limitation period to assignees
has very little force where the note is not in default at the time
it is sold by the FDIC.  In such a case, the assignee will always
have some reasonable period within which to enforce the note after
it goes into default.  Accordingly, while the Fifth Circuit  
earlier adopted the general rule that the assignee could use the
FIRREA statute, Bledsoe, 989 F.2d at 811, it drew the line at this
point and refused to extend this benefit to the situation in which
the note was not in default at the time of the FDIC's assignment.  
We think it was right to do so.
 In the present case, the estate cannot take advantage of
Cadle directly because (so far as we can tell) the note was in
default at the time it was sold by the FDIC to Beckley and, of
greater relevance, DiGeronimo himself was probably already subject
to suit on the guaranty.  The terms of the guaranty and of the note
generally control when the claim against the guarantor accrues,
typically either from the point at which the primary maker defaults
on the guaranteed note or at some later point when a demand has
been made on the guarantor for payment.  Although the parties have
not briefed the issue in this case, it appears likely to us and we
will assume that the ordinary statute of limitations had begun to
run on the guaranty prior to its transfer to Beckley.
 Nevertheless, the one-year New Hampshire statute had not
begun to run at the time of the transfer because Beckley acquired
the note and the guaranty in June 1994 and DiGeronimo did not die
until July 1994.  Accordingly, Beckley had the same one-year period
to sue as any other person (apart from the FDIC) who happened to
have a claim against a New Hampshire decedent.  And because Beckley
acquired the guaranty before this period even began to run, its
position is closely analogous to the assignee in Cadle that
acquired its note prior to the default.  Put differently, there is
no reason why a special statute of limitations is needed in this
case to make the obligation marketable to a purchaser, and absent
such a reason, the policy behind state statutes of limitation--
vivid in this case--ought to be respected.
 We are not suggesting that in every case there should be
a precise balancing of interests to decide whether the assignee
should get the benefit of the special FIRREA statute of
limitations.  Rather, we adopt the principle in Cadle that the
assignee does not get this benefit where an obligation is
transferred by the FDIC before it is in default.  And it is a
natural extension of this principle that the assignee should not be
able to avoid a state probate statute such as New Hampshire's when
the maker of the note or guarantor had not died at the time that
the instrument is transferred.  This will require private
purchasers of FDIC notes to be as diligent as other local
plaintiffs, but it is a reasonable enough requirement that should
not have any significant impact on the marketability of FDIC
assets.
 Having concluded that the New Hampshire statute bars
Beckley's suit against the estate, we do not address an alternative
ground offered by the estate as a reason to affirm the district
court's judgment.  The estate's premise is that the FDIC agreed to
release DiGeronimo  from his guaranty prior to the March 16, 1994,
sale.  Specifically, DiGeronimo says that the FDIC  would be barred  
from enforcing the guaranty by accord and satisfaction and by
estoppel, and, as Beckley purports to stand in the FDIC's shoes, it
should be similarly barred.  Beckley offers a series of technical
objections to this argument, including the assertion that such
defenses had not been adequately pled by the estate under Fed. R.
Civ. P. 8(c).   Needless to say, Beckley's position is
unattractive from an equitable standpoint, assuming that RECOLL did
promise a release.  But technicalities sometimes prevail--for
reason of long-term advantage to society--over immediate equities.  
Yet it is by no means clear that Beckley's multiple objections to
the estate's alternative grounds could be resolved without further
proceedings in the district court.  It is for this reason that we
have assumed dubitante throughout that Beckley may have a valid
claim on the guaranty, and we have faced and resolved the difficult
statute of limitations issues on that assumption.
 Turning now to the estate's own appeal in No. 98-1464, it
presents complications that make the statute of limitations issue
look tame.  However, in the meantime, Beckley has reportedly failed
in its effort to obtain a waiver of the one-year New Hampshire
statute, making the guaranty effectively unenforceable.  Under
these circumstances, counsel for the estate agreed at oral argument
that the affirmative relief that DiGeronimo sought in No. 98-1464
is unnecessary should it prevail in the other appeal.  Accordingly,
we dismiss that appeal, subject always to reinstatement on motion  
if for some reason the issue should cease to be moot.
 In No. 96-2292, the judgment of the district court is
affirmed with costs to be awarded in favor of appellee.  In No. 98-
1464, the appeal is dismissed without prejudice and on this appeal,
each side shall bear its own costs.
 It is so ordered.

</body>

</html>