**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL ENTERPRISES,
INCORPORATED,
Plaintiff-Appellee,

v.

MARVIN J. BARNES; VICKY BARNES,
Defendants-Appellants.

No. 98-1786

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-97-534-3-19)

Argued: September 23, 1999

Decided: January 6, 2000

Before WIDENER and MICHAEL, Circuit Judges, and Frank
MAGILL, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Magill wrote the opin-
ion, in which Judge Widener and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Mortimer Meyer Weinberg, III, WEINBERG &
BROWN, Sumter, South Carolina, for Appellants. Theodore Von
Keller, BERRY, QUACKENBUSH & STUART, Columbia, South
Carolina, for Appellee. **ON BRIEF:** Mortimer Meyer Weinberg, Jr.,
WEINBERG & BROWN, Sumter, South Carolina, for Appellants.

**OPINION**

MAGILL, Senior Circuit Judge:

This case arises out of a suit by National Enterprises, Inc. (National) against Robert J. Barnes and Vicky Barnes (Barneses) on a personal guaranty executed by the Barneses to secure a note issued by Mid-Carolina Mobile Homes, Inc. (Mid-Carolina). The Barneses appeal the district court's[1] holding that the federal statute of limitations found in the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(14),[2] applies to assignees of the Resolution Trust Corporation (RTC) and that the doctrine of D'Oench Duhme & Co., Inc. v. FDIC, 315 U.S. 447 (1942),[3] and 12 U.S.C. § 1823(e),[4] bars the Barneses' claims that a condition

---

[1] The Honorable Dennis W. Shedd, United States District Judge for the District of South Carolina.

[2] The relevant language in 12 U.S.C. § 1821(d)(14) states:

> (14) Statute of limitations for actions brought by conservator or receiver
>
> (A) In general
>
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be--
>
> (i) in the case of any contract claim, the longer of--
>
> (I) the 6-year period beginning on the date the claim accrues; or
>
> (II) the period applicable under State law .. . .

FIRREA mentions "the Corporation," which is defined in the statute as the FDIC. See 12 U.S.C. § 1811. The statute gives the RTC the same rights and powers as the FDIC. See 12 U.S.C. § 1441a(b)(4)(A).

[3] The D'Oench doctrine prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift. See Resolution Trust Corp. v. Allen , 16 F.3d 568, 574 (4th Cir. 1994).

[4] Section 1823(e) essentially codifies the common law D'Oench doctrine, but the two remain separate and independent grounds for decision. See Young v. FDIC, 103 F.3d 1180, 1187 (4th Cir. 1997).

2

precedent to liability on the note and guaranty had not been performed. The Barneses also appeal the district court's award, under the provisions of the note, of attorneys' fees, costs, and accrued interest. We affirm.

I.

On July 18, 1985, Standard Federal Savings and Loan of Columbia, South Carolina (Standard Federal), loaned Mid-Carolina $1,200,000.06. The note represented a line of credit extended by Standard Federal to Mid-Carolina designed to allow Mid-Carolina to purchase new mobile homes and place the homes on its lot for sale. Standard Federal was to be repaid, pro tanto, from each sale. As part of the security for the loan, Standard Federal required that the Barneses provide a personal guaranty of the debt to Standard Federal. The appellants executed the guaranty on July 18, 1985.

On August 5, 1987, Mid-Carolina declared bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code. Although Mid-Carolina's bankruptcy triggered a provision in the note making it immediately due and payable, Standard Federal took no steps to enforce the guaranty against the Barneses. On August 2, 1991, the RTC placed Standard Federal into conservatorship. On December 15, 1992, National purchased the Mid-Carolina note from the RTC, together with all instruments and documents securing the note.

On March 3, 1997, National filed suit against the Barneses, contending that they were liable under the guaranty contract for $233,477.24, the balance due under the note. The appellants defended on the grounds that the applicable statute of limitations had run and that conditions precedent to liability under the note and guaranty had not been performed. On November 25, 1997, the district court denied the appellants' motion for summary judgment, holding that the applicable statute of limitations is the six-year federal statute of limitations, 12 U.S.C. § 1821(d)(14(A), and not a three-year South Carolina statute of limitations, S.C. Code Ann. § 530(1) (Supp. 1997). On May 4, 1998, the district court granted National's motion for summary judgment, holding that the D'Oench doctrine defeated appellants' defenses to liability. On February 22, 1999, the district court granted

3

appellee attorneys' fees of $17,080.00, costs of $150.00, and $200,736.85 in accrued interest under the provisions of the note.

II.

Appellants raise the issue of whether in South Carolina the statute of limitations applicable to the RTC when it acts as receiver also applies to its assignees. Once the RTC placed Standard Federal into conservatorship on August 2, 1991, the federal six-year statute of limitations found in 12 U.S.C. § 1821(d)(14)(A) applied to all claims by the RTC arising from its position as conservator. For the RTC, the statute of limitations on the Barneses' guaranty contract began to run as of August 2, 1991. See 12 U.S.C. § 1821(d)(14)(B)(i).[5] National, as assignee of the RTC, brought suit against the Barneses on the guaranty contract on March 3, 1997. The appellants argue that Section 1821(d)(14) is personal to the RTC and that a three-year South Carolina statute of limitations, S.C. Code Ann. § 530(1) (Supp. 1997), applies to the assignees of the RTC and bars National's action.

To determine which statute of limitations applies, the court must look to South Carolina law. See Federal Fin. Co. v. Hall, 108 F.3d 46, 50 (4th Cir. 1997). In Hall, because Section 1821(d)(14) is silent with respect to its application to the RTC's assignees, the court was faced with the issue of whether to apply federal common law or state law to the issue. The court held that courts must look to state law to determine the statute of limitations governing the rights of assignees of the RTC because no federal policy presented a sufficient justification for a federal common law rule of decision. Id. at 48-49.

South Carolina law is clear that the right to sue under the statute of limitations in Section 1821(d)(14) is not personal to the RTC and

_____

[5] 12 U.S.C. § 1821(d)(14)(B) states:

> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of-
>
> (i) the date of the appointment of the Corporation as conservator or receiver; or
>
> (ii) the date on which the cause of action accrues.

4

is available to all assignees or transferees of the RTC. Twelfth RMA Partners, L.P. v. National Safe Corp., 335 S.C. 635, 518 S.E.2d 44, 47 (Ct. App. 1999). Therefore, under South Carolina law, Section 1821(d)(14) applies to National's action against the Barneses and National's suit is not time barred.[6]

## III.

The appellants argue that Standard Federal[7] failed to comply with certain conditions precedent to liability under the note and guaranty. They claim that the failure to comply with the conditions precedent either voided the guaranty entirely or greatly reduced the amount of appellants' liability pursuant to the guaranty. Appellants claim that language on the face of the note indicating that repayment terms would be governed by, among other things, "other repayment terms as shown in manufacturer's repurchase agreements," created a duty for Standard Federal that was a condition precedent to Mid-Carolina's liability under the note. The appellants claim that Standard Federal's duty, in the event that Mid-Carolina declared bankruptcy, would be to use the repurchase agreements to call on the manufacturers of the mobile homes in question to repurchase the mobile homes at invoice price and then apply the proceeds to the note.

Appellants can only prevail if they establish the following: (1) that their claims about the character and meaning of the repurchase agreement clause are correct, and (2) that the D'Oench doctrine, as delineated by the Supreme Court in D'Oench, Duhme & Co, Inc. v. FDIC, 315 U.S. 447 (1942), and its statutory equivalent, 12 U.S.C. § 1823(e),[8]

_____

[6] Appellants also argue that even if section 1821(d)(14) applies, the note in question was a demand note and, consequently, the statute of limitations began to accrue on July 18, 1985, the date of the note. Appellants' characterization of the note as a demand note was introduced for the first time on appeal and the argument is, therefore, deemed waived. See Skipper v. French, 130 F.3d 603, 610 (4th Cir. 1997) (stating the rule that "[o]rdinarily, for very good reasons, we do not decide issues on the basis of theories first raised on appeal").

[7] Because appellants' defenses are meritless, we need not decide appellants' contention that National is not a holder in due course of the guaranty.

[8] Congress has substantially codified the elements of the common-law D'Oench doctrine in 12 U.S.C. § 1823(e), providing in pertinent part:

5

do not bar the action. Because the appellants cannot show that the first prong of the analysis has been satisfied, we need not decide whether the D'Oench doctrine would bar appellants' claims.**9**

The appellants are unable to produce any evidence indicating that the repurchase agreements in question create the obligations that they claim. Even if the vague reference in the note that"[o]ther repayment terms as shown in manufacturers repurchase agreements" is sufficient to satisfy the D'Oench doctrine's requirement that agreements be properly reflected in the bank's records, the appellants have not produced the repurchase agreements in question. Marvin J. Barnes' self-

_____

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it...as receiver of any insured depository institution [ ] shall be valid against the Corporation unless such agreement-

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

**9** There is also a serious question of whether, assuming that appellants' representations about the repurchase agreements are valid, the guaranty contract incorporates the repurchase agreements as a condition precedent to liability. South Carolina courts have said that the rights and duties of guarantors are distinct from the rights and duties of makers of notes and a guaranty of payment is a contract separate and distinct from the original note. See Citizens and Southern Nat'l Bank v. Lanford, 313 S.C. 540, 443 S.E.2d 549, 551 (1994) (holding that the guarantor was not a party to the note and could not avail himself of defenses based on impairment of collateral). Here, however, appellants have failed to produce sufficient evidence indicating the existence of a condition precedent, and we need not decide whether the condition precedent would apply to the guaranty contract.

6

serving affidavit describing the content of the repurchase agreements is not enough to defeat National's motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (holding that to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor).

IV.

The appellants appeal the district court's award of attorneys' fees, costs, and accrued interest under the provisions of the note[10] on the basis that National's failure to utilize the repurchase agreements voids any obligations of appellants under the note and guaranty. Because appellants' repurchase agreement defense is without merit, the district court's award is affirmed.

CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

_____

[10] The note provided, in pertinent part, that "[u]npaid principal and interest due at maturity, or upon demand, shall bear interest at the rate set forth above until paid in full. In the event that this Note is not paid at maturity . . . the undersigned agrees to pay all costs and expenses of the Holder in the collection of this Note, including reasonable attorneys' fees."

7