**RHONE–POULENC AGRO, S.A. (Now known as Aventis CropScience SA), Plaintiff–Appellant,**

v.

**DeKALB GENETICS CORPORATION, Defendant,**

**and**

**MONSANTO COMPANY (now known as Pharmacia Corporation), Defendant–Appellee.**

Nos. 00–1266, 00–1352.

United States Court of Appeals, Federal Circuit.

Nov. 19, 2001.

George Pazuniak, Connolly Bove Lodge & Hutz LLP, of Wilmington, Delaware, argued for plaintiff-appellant. With him on the brief were Rudolf E. Hutz, Richard D. Levin, and Francis DiGiovanni.

E. Edward Bruce, Covington & Burling, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert N. Sayler, and Kurt G. Calia.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

DYK, Circuit Judge.

Rhône–Poulenc Agro, S.A. ("RPA") appeals from the decision of the United States District Court for the Middle District of North Carolina granting summary judgment of non-infringement on the ground that Monsanto Co. ("Monsanto") has a valid license to U.S. Patent No. 5,510,471, reissued on December 14, 1999 as RE 36,449 ("the '471 patent"). *Rhône–Poulenc Agro, S.A. v. Monsanto Company,* No. 1:97CV1138, 2000 U.S. Dist. LEXIS 21330 (M.D.N.C. Feb. 8, 2000). The issue here is whether a sublicensee (Monsanto) that acquired the sublicense from a licensee (DeKalb Genetics Corp. ("DeKalb")), that acquired the original license by fraud, may retain the sublicense by establishing that the sublicensee was a bona fide purchaser for value. We hold that we are bound by this court's earlier decision in *Heidelberg Harris, Inc. v. Loebach,* 145 F.3d 1454, 46 USPQ2d 1948 (Fed.Cir. 1998), that a bona fide purchaser defense is available in such circumstances. Accordingly, we affirm the decision of the district court.

BACKGROUND

The detailed history of this case is set forth in our opinion in the companion case of *Rhône–Poulenc Agro, S.A. v. DeKalb Genetics Corp.,* Nos. 00–1218, 00–1350, 00–1351, 2000 WL 33644776 (Fed.Cir. Nov. 19, 2001), which is also being issued today. Briefly the facts are these. From 1991 through 1994, RPA and DeKalb collaborated on the development of biotechnology related to specific genetic materials. During this time, a scientist at RPA, Dr. DeRose, developed an optimized transit peptide ("OTP") with a particular maize gene, which proved useful in growing herbicide resistant corn plants. The OTP is covered by the claims of the '471 patent and is the subject of RPA's patent infringement claim against Monsanto.

In 1994, RPA, DeKalb, and non-party Calgene, Inc. ("Calgene") entered into an agreement (the "1994 Agreement") that provided:

RPA and CALGENE hereby grant to DEKALB the world-wide, paid-up right to use the RPA/CALGENE Technology and RPA/CALGENE Genetic Material in the field of use of corn. DEKALB shall have the right to grant sublicenses to the aforementioned right to use without further payment being made to RPA or CALGENE.

The RPA/CALGENE Technology and RPA/CALGENE Genetic Material included the invention claimed in the '471 patent. In 1996, DeKalb sublicensed its rights to the RPA/Calgene Technology and Genetic Material to Monsanto. At the same time Monsanto granted to DeKalb licenses to use certain intellectual property related to genetically-engineered corn. Monsanto also acquired a forty percent equity interest in DeKalb, and ten percent of DeKalb Class A (voting) stock.

On October 30, 1997, RPA filed suit against DeKalb and Monsanto, seeking, *inter alia,* to rescind the 1994 Agreement on the ground that DeKalb had procured the license (the "right to use") by fraud.

RPA also alleged that DeKalb and Monsanto were infringing the '471 patent and had misappropriated RPA's trade secrets. Monsanto defended, *inter alia*, on the ground that it had a valid license to practice the patent and use the trade secrets, based on the rights owned under the 1994 Agreement that were transferred by DeKalb to Monsanto in 1996. At trial, a jury found, *inter alia*, that DeKalb had fraudulently induced RPA to enter into the 1994 Agreement. The district court ordered rescission of the 1994 Agreement. Nonetheless, Monsanto moved the district court for summary judgment that it had a valid license to the '471 patent and the right to use RPA's trade secrets because under the 1996 Agreement Monsanto was a bona fide purchaser for value of the sublicense to the patent and the trade secrets. The district court orally granted this motion and dismissed the infringement and misappropriation claims against Monsanto. RPA moved for reconsideration of the district court's dismissal, but the district court, relying on *Heidelberg Harris*, 145 F.3d 1454, 46 USPQ2d 1948, reaffirmed its grant of summary judgment in a February 8, 2000, opinion.

The district court found that, as a sublicensee of the '471 patent and the trade secrets, Monsanto was "entitled to be considered a bona fide purchaser, because it paid value for the right to use the technology without knowledge of any wrongdoing by DeKalb." *Rhône–Poulenc*, 2000 U.S. Dist. LEXIS 21330, at *80. Because "Monsanto [was] a bona fide purchaser of the ... technology, [it] therefore [could not] be liable as a patent infringer or a trade secret misappropriater." *Id.* at *71. The district court explicitly did not reach the issues of whether Monsanto's bona fide purchaser defense would apply to any future licenses of RPA's technology or whether, in light of the 1994 RPA DeKalb Monsanto Agreement granting DeKalb the right to sublicense, the bona fide purchaser defense would benefit sublicenses of Monsanto.

RPA filed this timely appeal, which concerns only the validity of Monsanto's license to practice the '471 patent. On this appeal, RPA does not challenge the district court's dismissal of RPA's claim for trade secret misappropriation.

## DISCUSSION

### I

■ We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307, 46 USPQ2d 1752, 1755 (Fed.Cir.1998). We review a district court's grant of a motion for summary judgment without deference. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998).

### II

■ In *Rhône–Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, No. 00–1218, 00–1350, 00–1351, 2000 WL 33644776 (Fed. Cir. Nov. 19, 2001), we have today affirmed the judgment of the district court, rescinding the 1994 licensing agreement based on a jury verdict finding that DeKalb acquired its patent license by fraud. RPA asserts that it necessarily follows that the Monsanto sublicense to the '471 patent is void, and that Monsanto can be sued for patent infringement. We disagree.

In *Heidelberg Harris*, 145 F.3d 1454, 46 USPQ2d 1948, we addressed the issue of a bona fide licensee defense to a claim for

patent infringement. In that case, inventor Loebach assigned his rights to an invention to his employer, the Motter Printing Co. ("Motter"). Thereafter, a patent on the invention was issued to Motter, and Motter later licensed the patent to Harris Graphics Corp ., a predecessor in interest to Heidelberg Harris, Inc. ("Harris"). Subsequently, Loebach sued Motter and Harris for patent infringement, alleging that the assignment of rights to Motter was "void" due to fraud. This court affirmed the district court's grant of summary judgment of non-infringement in favor of Harris on the ground that Harris was a bona fide purchaser of the patent license. *Id.* at 1456, 145 F.3d 1454, 46 USPQ2d at 1949. On appeal to this court, "Loebach [did] not dispute the availability of the bona fide purchaser defense generally, [but rather] he contend[ed] that the district court erred in holding that Harris is a bona fide purchaser in this case." *Id.* at 1458, 145 F.3d 1454, 46 USPQ2d at 1951. Loebach's more limited argument was that "Harris had notice of Loebach's claim" prior to the date it acquired its license to the patent. *Id.,* 145 F.3d 1454, 46 USPQ2d at 1951.

We held that, on the undisputed facts, the district court had properly ruled in Harris's favor (because Harris had not had notice of Loebach's claim prior to purchase), *id.* at 1459, 145 F.3d 1454, 46 USPQ2d at 1952, and accordingly affirmed the grant of summary judgment of non-infringement, *id.* at 1461, 46 USPQ2d at

1953. We announced the following rule in *Heidelberg Harris:* "the bona fide purchaser for value rule, as applied to patents, provides that one who acquires an interest in a patent for valuable consideration from the legal title holder, 'without notice of an outstanding equitable claim or title,' is entitled to retain the purchased interest, 'free of any equitable encumbrance.' " *Id.* at 1458, 145 F.3d 1454, 46 USPQ2d at 1951 (quoting *FilmTec Corp. v. Allied–Signal, Inc.,* 939 F.2d 1568, 1573, 19 USPQ2d 1508, 1512 (Fed.Cir.1991)).

## III

RPA argues that *Heidelberg Harris*'s extension of the bona fide purchaser rule to licenses, where there has been no transfer of title, is mere dictum, not binding on the panel. RPA notes that the issue was not briefed or argued in *Heidelberg Harris.* Indeed, the parties did not contest that the bona fide purchaser rule applied to patent licenses. The sole authority cited in our opinion for the rule was *Filmtec* which applied the bona fide purchaser rule only to a party acquiring title to the patent. RPA also argues that there is no support in the common law for the rule announced in *Heidelberg Harris,* stating in its brief that "*Harris* appears to be the only instance in which a licensee, as opposed to a purchaser of actual property or its equivalent, was permitted to rely on a common law bona fide purchaser defense." [1]

1. Many courts have held that a party to an executory contract to purchase title, the owner of a lease, or a purchaser from a vendor who did not have title cannot benefit from the bona fide purchaser rule. *See, e.g., Villa v. Rodriguez,* 12 Wall. 323, 79 U.S. 323, 338, 20 L.Ed. 406 (1870) (when asserted by lessees holding an option to purchase land, "the [bona fide purchaser] doctrine invoked has no application where the rights of the vendee lie in an executory contract. It applies only where the legal title has been conveyed and the purchase-money fully paid."); *Smith v. Orton,* 131 U.S. app. lxxv, lxxviii (1866) ("To bring the defence within [the bona fide purchaser rule], it must be averred ... that the conveyance was by deed, and that the vendor was seised of the legal title."); *Island Pond Nat'l Bank v. Lacroix,* 104 Vt. 282, 300, 158 A. 684 (1932) ("It is generally held that the doctrine which protects a bona fide purchaser for a valuable consideration and without notice

■ Although "[t]his court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc," *Newell Cos., Inc. v. Kenney Manufacturing Co.*, 864 F.2d 757, 765, 9 USPQ2d 1417, 1423 (Fed.Cir.1988), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62,· 107 L.Ed.2d 30 (1989), we are not bound by dictum in earlier cases. But the statements in *Heidelberg Harris* concerning the application of the bona fide purchaser rule to licensees are not dictum. We disposed of that case by applying the bona fide purchaser rule. To be sure, some of our decisions have suggested that a decision applying a particular rule is not binding precedent if the issue was not argued or "analyzed" or "discussed" by the court. *See, e.g., United States v. County of Cook, Illinois*, 170 F.3d 1084, 1088 (Fed.Cir. 1999); *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1581, 19 USPQ2d 1424, 1431 (Fed.Cir. 1991); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (reaffirming longstanding rule that if a decision does not "squarely addres[s][an] issue, 'a court remains' free to address the issue on the merits" in a subsequent case). While the question of precedential effect is a close one here, we conclude that there was sufficient discussion of the bona fide purchaser rule in

of existing equities is applicable solely to the purchaser of a legal title or interest. . . ."); *Kaiser Energy, Inc. v. Commonwealth, Dep't of Envtl. Res.*, 113 Pa. Commw. Ct. 6, 13 (1988) ("It is axiomatic that a person cannot effectively convey property in which he has no ownership rights. The bona fide purchaser concept applies only to purchasers *of legal title*.") (Emphasis in original.); *Myers v.. Van Buskirk*, 96 Fla. 704, 712, 119 So. 123 (1928) ("In order to claim the full protection of the rule as to bona fide purchasers, the purchaser must hold·a legal title, or be entitled to call for it, for if his title be merely equitable, then it must yield to a superior equity in an adverse party."); *Arnett v. Stephens*, 199 Ky. 730, 736, 251 S.W. 947 (1923) ("An assignor of a lease, unless by special covenant, is not a warrantor of title, and the assignee does not occupy the position of a bona fide purchaser."); *Bozeman Mortuary Ass'n v. Fairchild*, 253 Ky. 74, 81, 68 S.W.2d 756 (1934); *Merchants' & Farmers' State Bank v. Olson*, 189 Minn. 528, 532, 250 N.W. 366 (1933) ("If no title passes to the grantee named in the deed, then, of course, he can pass nothing on to an innocent subvendee."); *Cook v. Eller*, 298 S.C. 395, 397, 380 S.E.2d 853 (S.C.Ct.App. 1989) ("An individual cannot claim bona fide purchaser status if his grantor never had title to the property ."), *cert. dism'd.* 302 S.C. 160, 394 S.E.2d 327 (1990); 77 Am.Jur.2d § 427 (1997) ("The protection accorded a person as a bona fide purchaser of real estate does not apply to a person who acquires no semblance of title. If the vendor has no title, the purchaser acquires none."); 77 Am.Jur.2d § 430 (1997) ("[T]he protection afforded a bona fide purchaser of real estate generally extends only to persons purchasing and acquiring legal title. . . .").

We note that official comment 3 to § 506(b) of the Uniform Computer Information Transactions Act ("UCITA") suggests that the drafters of the Uniform Commercial Code concluded that at common law the bona fide purchaser rule does not apply to the licensing of intellectual property:

Subsection (b) provides that as a general rule, a licensee's transferee acquires only those contractual or other rights that the licensee was authorized to transfer. *There is no principle of bona fide purchaser of a mere contract right.*

Similarly, *neither copyright nor patent recognize concepts of protecting a buyer in the ordinary course (or other good faith purchaser)* by giving that person greater rights than were authorized to be transferred even if the transfer includes delivery of a copy associated with the contract. Transfers that exceed or are otherwise unlicensed by a patent or copyright owner create no rights of use in the transferee. Indeed, such transfers may in themselves be an infringing act.

(Emphases added.). Unif. Computer Info. Transactions Act § 506(b), cmt. 3 (2000), *available at* http://www.law.upenn.edu/bll/ulc/ucita/ucitaFinal00.pdf.

*Heidelberg Harris* (even though the issue was not argued) that we are compelled to regard it as precedent. We accordingly hold that we are bound by *Heidelberg Harris* to hold that the bona fide purchaser rule applies to licensees. Any argument to the contrary must be addressed to the court sitting in banc.

The remaining questions here are (1) whether *Heidelberg Harris* announced a rule of federal or state law; (2) whether *Heidelberg Harris* is distinguishable; and (3) whether Monsanto is a bona fide purchaser.

## IV

To some extent the bona fide purchase defense in patent cases is governed by a federal statute. 35 U.S.C. § 261 provides that "[a]n assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage."

■ But neither *Heidelberg Harris* nor this case involves the situation covered by section 261. Even assuming, arguendo, that section 261 applies to all licenses,[2] that statute is by its terms limited to situations in which the patent owner makes inconsistent assignments, grants, or conveyances to two entities, and the question is whether the later assignee should prevail. Section 261 provides that a later bona fide purchaser for value without notice (a later assignee) prevails if the earlier

assignment was not timely recorded in the patent office. Both this case and *Heidelberg Harris* involve a different situation-the circumstance in which the interest in the patent held by the grantor is voidable and the question is whether a grantee may retain its interest even if the grantor's interest is voided. In such a situation section 261 does not provide the answer.

■ We thus must address the question, not reached by this court in *Heidelberg Harris,* whether the bona fide license defense to a patent infringement claim, not directly governed by section 261, is a matter of state or federal common law. This issue has particular importance in this case because North Carolina state law, the law of the forum state, apparently does not recognize a bona fide purchaser defense unless there has been a title transfer.[3] We conclude that the bona fide purchaser defense for licenses is governed by federal law—in this case, federal common law. The general rule, stated in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is "there is no federal general common law." However, the courts have allowed federal common law where a federal rule of decision is "necessary to protect uniquely federal interests." *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). In such a case, however, the creation of a federal rule should be "limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

---

**2.** It seems clear that section 261 does not apply to non-exclusive licenses, which is the situation involved here. *See In re Cybernetic Servs., Inc.,* 252 F.3d 1039, 1048–57 (9th Cir. 2001).

**3.** Under the law of North Carolina (the state in which RPA filed suit) "in the absence of estoppel, one is not entitled to protection as a bona fide purchaser unless he holds the legal title to the property in dispute." *Wilson v. Commercial Fin. Co.,* 239 N.C. 349, 79 S.E.2d 908, 914 (1954).

■ Contractual rights in patents are generally governed by state law. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296, 201 USPQ 1, 4 (1979); *Lear, Inc. v. Adkins*, 395 U.S. 653, 661–62, 89 S.Ct. 1902, 23 L.Ed.2d 610, 162 USPQ 1, 5 (1969). However, where state law "would be inconsistent with the aims of federal patent policy," *Lear*, 395 U.S. at 673, 89 S.Ct. 1902, 23 L.Ed.2d 610, 162 USPQ at 9, we have held that the need for national uniformity in patent law requires the application of federal common law. *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372, 52 USPQ2d 1801, 1805 (Fed.Cir.1999). *See also Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 645, 119 S.Ct. 2199, 144 L.Ed.2d 575, 51 USPQ2d 1081, 1088 (1999) ("The need for uniformity in the construction of patent law is undoubtedly important...").

■ On the related question of the transferability of patent licenses, many courts have concluded that federal law must be applied. *In re CFLC, Inc.*, 89 F.3d 673, 679, 39 USPQ2d 1518, 1523 (9th Cir.1996); *Unarco Indus., Inc. v. Kelley Co., Inc.*, 465 F.2d 1303, 1306, 175 USPQ 199, 201 (7th Cir.1972) (because "question of assignability of a patent license is a specific policy of federal patent law dealing with federal patent law .... federal law applies to the question of the assignability of the patent license in question"); *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090, 1093, 202 USPQ 95, 97 (6th Cir.1979) ("Questions with respect to the assignability of a patent license are controlled by federal law."). In so holding courts generally have acknowledged the need for a uniform national rule that patent licenses are personal and non-transferable in the absence of an agreement authorizing assignment, contrary to the state common law rule that contractual rights are assignable unless forbidden by an agreement. This is so because federal patent policy seeks to encourage the disclosure of new, useful, and non-obvious inventions by granting the inventor the exclusive right to exclude others from making, using, or selling the invention for a period of years. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150–51, 109 S.Ct. 971, 103 L.Ed.2d 118, 9 USPQ2d 1847, 1852 (1989). Allowing free assignability of patent licenses would frustrate this purpose because every licensee would become a potential competitor with the licensor-patent holder in the market for the invention; and even if the patentee could control the number of licenses, he would lose the very important ability to control the identity of the licensees.

So too we have held that the question of whether an invention is the subject of a commercial offer for sale more than one year before a patent is filed is a question of federal rather than state law, since it bears on the validity of patents under 35 U.S.C. § 102(b). *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1047, 59 USPQ2d 1121, 1126 (Fed.Cir.2001). We noted that rule was necessary to avoid the possibility of a patent being valid in one state and invalid in another state. *Id.*, 254 F.3d 1041, 59 USPQ2d at 1126; *see also Scaltech, Inc. v. Retec/Tetra*, 269 F.3d 1321 (Fed.Cir.2001).

■ Here, it would be particularly anomalous for a federal rule to apply to "assignment[s], grant[s], and conveyance[s]" under section 261 and for a law state rule to apply to license assignments. Because of the importance of having a uniform national rule, we hold that the question of whether a bona fide purchaser defense to patent infringement may be asserted is a matter of federal law. To hold otherwise would potentially permit an

accused infringer to successfully assert the defense in one state and not in another. Because such a federal rule implicates an issue of patent law, the law of this circuit governs the rule. *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed.Cir. 1999) (*en banc* in relevant part). Of course, the creation of a federal rule concerning the bona fide purchaser defense is informed by the various state common law bona fide purchaser rules as they are generally understood.[4] *Scaltech,* 269 F.3d 1321 (looking to the U.C.C. to develop federal rule for determining when an invalidating offer to sell under 35 U.S.C. § 102(b) occurs); *Group One,* 254 F.3d at 1047 (also looking to the U.C.C. to inform federal common law). We conclude that the rule in *Heidelberg Harris* is a rule of federal law applicable to all federal patent cases.

## V

Finally, RPA seeks to distinguish *Heidelberg Harris* on the ground that here the license was acquired from a licensee, while in *Heidelberg Harris* the license was acquired from the patentee. We view this distinction as immaterial. The rule in *Heidelberg Harris* recited the fact that Harris had obtained its interest in the patent from the legal title holder, but our opinion did not further discuss this fact, nor did our holding depend on this fact. Moreover, in affirming the district court's ruling that "Harris is a bona fide purchaser of a license under the asserted patent and therefore is not subject to suit," *Heidelberg Harris,* 145 F.3d at 1456, 46 USPQ2d at 1949, we did not draw a distinction based on whether the license had been obtained from a patentee or a licensee. We decline to establish such a distinction here.

## VI

RPA also suggests that Monsanto was not a bona fide purchaser because Monsanto was not an independent third party due to a forty percent nonvoting equity stake it held in DeKalb at the time it acquired its sublicense; because it was at least on inquiry notice of RPA's interest; because it did not prove that it had paid valuable consideration of the license; and because the balance of equities favors RPA. Again, we are not convinced.

*McDaniel v. Hughes,* 206 Md. 206, 223, 111 A.2d 204 (Md.1955), which RPA cites for the proposition that a third party must be "independent" of the intermediary in order to be a bona fide purchaser, requires not that the corporate structure of the third party and the intermediary be independent, but that the intermediary not act as a "straw man" in the conveyance from the owner to the third party, such that the third party has actual notice of the competing claim to the property. *Johnson v. Robinson,* 203 F.2d 135 (5th Cir.1953), also cited by RPA, was decided on similar grounds.

RPA does not present any evidence that Monsanto was on notice of RPA's competing claim. Rather, RPA points to "the close relationship between Monsanto and DeKalb," but RPA does not define this further and cites no authority that such a relationship constitutes notice to an alleged bona fide purchaser. A "close rela-

---

4. Similarly, courts generally assume that federal statutes which regulate in the area previously governed by the common law are to be interpreted to be consistent with the common law unless Congress clearly articulates a contrary rule. *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *INS v. St. Cyr,* 533 U.S. 289, ——, 121 S.Ct. 2271, 2286, 150 L.Ed.2d 347 (2001).

tionship" between Monsanto and DeKalb alone does not raise a genuine issue of material fact as to this issue. Indeed, RPA did not raise the issue before the district court. The district court specifically found that "there ha[d] been no suggestion that Monsanto had notice of DeKalb's fraudulent behavior when Monsanto received its license."

Nor does RPA allege any facts to challenge Monsanto's showing that licenses it provided to DeKalb represented valuable consideration for the licenses it received from DeKalb. In the absence of a showing by RPA, there is no genuine issue of material fact on this issue. Finally, the bona fide purchaser rule does not allow for the weighing of supposed equities in individual cases.

In sum, because we are compelled to follow our precedent of *Heidelberg Harris,* we hold that on the undisputed facts the district court correctly concluded that Monsanto has established a defense to infringement based on a bona fide purchase of a license to the patent.

## CONCLUSION

We accordingly affirm the decision of the district court.

## COSTS

No costs.