**In re Gloria P. ZAMORA, Debtor.**

No. 97–51080.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 3, 2002.

Joseph W. Shulter, San Antonio, TX, for Debtor.

Johnny W. Thomas, San Antonio, TX, trustee.

**MEMORANDUM OPINION ON DEBTOR'S MOTION TO AWARD ATTORNEY FEES AFTER CONVERSION TO CHAPTER SEVEN AND REQUEST FOR DECLARATORY RELIEF**

LEIF M. CLARK, Bankruptcy Judge.

Debtor converted her case from Chapter 13 to Chapter 7. At the time of conversion, the Chapter 13 Trustee had funds on hand and/or received funds after conversion from the employer of the Debtor. Since Debtor did not have the monies available to pay the attorney fees for the Chapter 7 conversion and representation. Debtor assigned the funds to the Law Offices of Roger N. Havekost. The Chapter 13 Trustee refused to tender the funds to the Debtor's attorney and objected to the method of payment proposed by the Debtor. The debtor then filed a motion to authorize the payment of its attorney fees and sought declaratory relief regarding the procedures that might be permitted.

This memorandum opinion serves as both a ruling on the discrete dispute and as a holding for how and under what circumstances a debtor's intended assignment of funds due from the chapter 13 trustee is to be honored by the chapter 13 trustee.

## Background and Arguments of the Parties

In 1994, Congress amended section 348 to resolve a conflict in the circuits regarding to whom funds held by the chapter 13 trustee upon conversion of a case should be disbursed. New section 348(f)(1)(A) overruled previous case law,[1] and now provides that, "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor on the date of conversion." *See* 11 U.S.C § 348(f)(1)(A); *see also In re Frausto*, 259 B.R. 201, 209 (Bankr.N.D.Ala.2000). Because post-petition earnings are, by definition (and common sense), not property of the estate as of the date of the commencement of the case,[2] once a chapter 13 case is converted to chapter 7 (or dismissed, for that matter), any monies that represent post-petition earnings that may remain in the hands of the chapter 13 trustee belong not to the bankruptcy estate but to the debtor.[3] Thus, in the ordinary case, once a case is converted, the chapter 13 trustee must send the debtor those monies (after deducting certain administrative expenses and costs).

The failure of a chapter 13 case has real consequences for the debtor's attorney. If the case is converted, the lawyer will have a continuing duty to perform various services for the debtor, including preparing conversion schedules and appearing with the debtor at a new first meeting of creditors. Unfortunately, the debtor is unlikely to have any excess funds on hand with which to pay the lawyer, because the plan has already devoted all of the debtor's net disposable income to paying claims, leaving only enough money for the debtor to support herself and her dependents. If the plan fails, it is usually because the debtor lacks enough money to even make the plan work (or to achieve confirmation). Once the case is converted, the debtor's lawyer can no longer be paid out over time under a court-supervised distribution scheme—in fact the debtor's lawyer in chapter 7 cannot be paid out of estate assets at all. *See* 11 U.S.C. § 330(a).[4] The only ready

---

**1.** *See e.g. In re Bartlett*, 149 B.R. 446 (Bankr. W.D.Tex.1992); *Matter of Baker*, 154 F.3d 534 (5th Cir.1998). Many courts believed that property held by the chapter 13 trustee upon conversion properly became property of the chapter 7 estate. *See id.*

**2.** They only become property of the estate in a chapter 13 case by virtue of section 1306. *See* 11 U.S.C. § 1306(a)(2). Otherwise, post-petition earnings are not included in the definition of property of the estate found in section 541(a). *See* 11 U.S.C. § 541(a)(1)-(7).

**3.** There is a narrow exception to this rule: if the case is converted "in bad faith," then the property of the estate in the converted case will include the post-petition earnings in the hands of the chapter 13 trustee. 11 U.S.C. § 348(f)(2). That is not the case here, of

course. Though the statute is silent about procedure, someone (presumably the chapter 7 trustee in most cases) would have to bring a "timely motion" to obtain a determination of bad faith, and presumably "timely" would mean some time before the chapter 13 trustee disburses funds on hand to the debtor. There is no requirement in the statute (or the rules) for the chapter 13 trustee to hold the funds for some period to see whether such a motion might be filed by some interested party.

**4.** *See* 11 U.S.C. § 330(a)(4)(B) (court authorization for payment of fees to a chapter 13 debtor's attorney). The fees are not really chargeable as a pre-petition claim, though some portion of the services may be performed pre-petition. The fees incurred in the chapter 13 case would be allowable in the converted chapter 7 as an administrative ex-

source of funds the debtor often has with which to pay the lawyer for the cost of representation in the converted case will therefore be the funds that remain on hand in the chapter 13 trustee's account resulting from undisbursed pay order deductions taken out of the debtor's paycheck during the chapter 13 case.

The debtor could, of course, simply pay the lawyer directly with the funds the debtor receives from the chapter 13 trustee once they are received, but the debtor's lawyer may be understandably reluctant to rely on payment in this fashion. The debtor, after all, might choose to use those funds to pay for something else—a car payment, a mortgage payment, groceries, utilities, a new television—leaving the lawyer unpaid. The lawyer, anticipating this possibility, might well choose to minimize the credit risk by asking the client debtor to simply *assign* to the lawyer the debtor's right to receive the funds due the debtor from the chapter 13 trustee. The equities favor obtaining this sort of assignment in the case of a conversion, because the lawyer is expected to perform additional services for the debtor, in the face of a substantial likelihood of nonpayment unless the funds on account with the chapter 13 trustee are applied to pay for these services. It is for these reasons that the debtors in this case chose to assign their right to receive money from the Chapter 13 Trustee to their lawyers to pay for the cost of representation in the converted

case. No doubt the attorney encouraged this procedure as well, for good reasons.

The chapter 13 trustee objects to having to honor such assignments, however. While not directly challenging the right of the debtor to assign the funds to her lawyer, the trustee suggests that such a process, if widely permitted, "has serious potential for overreaching by a debtor's attorney." The trustee also points out that his accounting procedures (apparently mandated by the United States Trustee) do not contain a disbursement category for payment to attorneys other than payment for allowed attorneys' fees.[5] Says the trustee, the final report required of the trustee by statute would "potentially show payments to the attorney of an exaggerated amount for attorney fees," leaving the trustee open to attack by either the debtor or by the Office of the United States Trustee. The trustee's next concern is that debtors might end up suing the trustee over disputes regarding money paid over to the attorney pursuant to an assignment (perhaps arguing that the assignment was fraudulently obtained, for example). The trustee also suggests that, if any of the money paid over to the attorney is for work done "pre-conversion," the trustee may find himself participating in paying off a debt that is in fact dischargeable in the debtor's chapter 7 bankruptcy case, without appropriate protections afforded by section 524(c). *See* 11 U.S.C. § 524(c); *In re Jastrem*, 253 F.3d 438 (9th Cir.

pense under section 503(b)(2) for expenses and reimbursement awarded pursuant to section 330(a). *See* 11 U.S.C. § 503(b)(2). The difficulty is that services to be performed for the debtor with respect to the chapter 7 case are not compensable as an estate expense (there is no provision in section 330(a) for payment of the debtor's fees, except for the special provision for chapter 13 debtors' attorneys in subsection (a)(4)(B)), and are not a pre-petition claim either, because pre-petition

expressly means before the commencement of the bankruptcy case, as opposed to the date of its conversion to chapter 7. *See Matter of Sandoval*, 103 F.3d 20 (5th Cir.1997).

5. Of course, though the payment is indeed a payment for attorneys' fees, it is not for *allowed* attorneys' fees, a term of art that refers directly to the section 330(a) fee allowance process. These fees are payable "outside" the purview of section 330(a). See note 4, supra.

2001). Finally, the trustee suggests that no more should be paid over to the attorney than can be attributable to conversion work, so that the balance should be refunded directly to the debtor.

## Analysis

■ The precise question presented on the facts of this case is whether a debtor can assign the monies due to the debtor from the chapter 13 trustee to the debtor's lawyer for services to be rendered in the now converted case. Broader issues are suggested as well in the request for declaratory relief, but this decision will not attempt to directly address them because they involve other factors not present here that might yield a different outcome.[6]

As has been noted, once a case is converted from chapter 13 to chapter 7, the debtor's estate consists only of property that would have been property of the estate under that chapter as of the date of filing. *See* 11 U.S.C. § 348(f)(1); *see also Matter of Sandoval,* 103 F.3d 20 (5th Cir. 1997). Assets that may have been disposed of since the filing do not come into the estate upon conversion, however. 11 U.S.C. § 348(f)(1)(A). Thus, upon conversion, the debtor is obligated to revise the bankruptcy schedules to reflect any changes in assets or creditors, and to make the necessary elections required by section 521. *See* 11 U.S.C. § 521; FED.R.BANKR.P. 1019(5)(B).[7] The debtor is also required to attend a new § 341 meeting, to be examined by creditors and by the chapter 7 trustee. Debtors are certainly entitled to legal assistance in fulfilling these obligations, but cannot by law pay for those services out of bankruptcy estate assets. *See* 11 U.S.C. § 330(a) (listing professionals who are entitled to be paid out of estate assets, and omitting attorneys who represent debtors in chapter 7 or 11). The lawyer of course has an ethical duty to continue the representation of the debtor, in order to complete the bankruptcy process, but the lawyer is not normally expected to work for free. Thus, the lawyer must look directly to the debtor for payment, if the lawyer is to be paid at all.

The lawyer and the debtor are thus placed in a bit of a bind. The lawyer will want to be paid for services rendered in assisting the debtor in the converted case, and will not want to become, in the process, a new creditor of the debtor, if that

---

6. For example, a debtor on conversion might also seek to assign the funds on account with the Chapter 13 Trustee to the lawyer in order to pay for services rendered during the course of the chapter 13 case. That scenario raises the prospect of the debtor directing the trustee to pay an attorney for services rendered during the chapter 13 case before the court approved the fees (fees for lawyers in chapter 13 cases are normally not approved until the plan is confirmed). The court would there have to consider whether such an assignment would contravene a trustee's duty to pay only allowed claims, or whether the attorney's claim would more properly be placed in the chapter 7 case.

In the case of a dismissal, the issues are much easier, but there is little reason to issue what would amount to *obiter dicta* as we are not here presented with such a case. The legal principles announced in this decision will no doubt affect how the court would rule in that context, however.

7. The debtor is expected to file a list of unpaid debts incurred after filing and before conversion, if a plan has not yet been confirmed. If a plan has been confirmed, then the debtor must also list any property acquired, unless section 348(f)(2) does not apply. *See* FED. R.BANKR.P. 1019(5)(C). In addition, a debtor must file a statement of intention with respect to certain exempt secured property. Western District local rules also require the debtor to file supplemental schedules indicating any changes to the creditor list, inventories, schedules, or statement of affairs since the original filing and prior to conversion. If no such changes are needed, then a certificate to that effect must be filed. BANKR.L.R. 1019 (Western District of Texas, December 2000).

can be avoided. The debtor, assuming a desire to in fact pay the lawyer, will have only a limited number of sources from which to draw payment for the lawyer's services. The debtor can look to post-petition income (because that is not property of the chapter 7 estate), or to exempt property, or to some other post-petition property. Some debtors may be fortunate enough to have sufficient income post-petition to pay their lawyers from that source, but most will not. While debtors could certainly liquidate some exempt property to pay their lawyers, the court is reluctant to announce a rule that essentially forces debtors to use that source, because such a rule would fly in the face of the fresh start principle that underlies both bankruptcy itself and the scheme of exemptions permitted by section 522(b).

All of which leaves the third potential resource for paying the debtor's lawyer for services to be performed in the converted case—post-petition property other than wages or exempt property. The funds on hand with the Chapter 13 Trustee, upon conversion, are, by definition, not property of the converted estate, and so afford a ready source for paying the debtor's lawyer for work to be done in the converted case. The prospective fees to be earned do not require court approval (because they are not governed by section 330), so the debtor ought to be free to use property that is not property of the estate to pay an attorney whose fees are not subject to prior court approval.

The principles thus far developed apply whether the debtor pays the fees directly, after receiving the money on account with the Chapter 13 Trustee, or pays them indirectly, by asking the Chapter 13 Trustee to send whatever money is due the debtor to the debtor's lawyer instead. In both cases, non-estate property is employed to pay a professional whose fees are not subject to court regulation.[8] All that remains, then, is to determine whether a debtor may assign her right to payment to the debtor's attorney for payment of fees for services to be rendered in the chapter 7 case, and whether that assignment should be binding on the Chapter 13 Trustee.

The answer to the first question appears to be that, absent an express prohibition in the law, a debtor may assign its right to payment from the Chapter 13 Trustee to the debtor's lawyer for services to be rendered in the converted case. The Restatement (Second) of Contracts explains that:

(1) An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.

(2) A contractual right can be assigned unless

(a) the substitution of a right of the assignee for the right of the assignor

---

**8.** Actually, there is a potential for court intervention in the narrow circumstance of an objection filed under section 329. That section requires attorneys to disclose compensation paid or to be paid to them "... if such payment ... was made after one year before the date of the filing of the petition, for services ... to be rendered ... in connection with the case by such attorney ...." 11 U.S.C. § 329(a). The court can order disgorgement of fees paid if "the compensation exceeds the reasonable value of any such services ..." 11 U.S.C. § 329(b). The attorney does not, by this section, have to apply for permission to be paid, nor must the attorney obtain pre-approval that the fees charged are compensable. All the section does is to afford a remedy to prevent overreaching. The section does not prevent a debtor from paying his or her lawyer without advance court approval, however.

would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or

(b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

(c) assignment is validly precluded by contract.

RESTATEMENT (2D) CONTRACTS, § 317 (American Law Institute 1981).

 The Restatement by its terms refers only to the assignment of contractual rights, but there is little reason not to employ its analysis with regard to the assignment of other rights to payment as well, so long as some other legal rule does not prohibit it. An assignment, in the general sense, is simply the "transfer or setting over of property, or some right or interest ... from one person to another." *See University of Texas Medical Branch at Galveston v. Allan,* 777 S.W.2d 450, 452 (Tex.App.—Houston [14 Dist.]1989). It is a manifestation by the owner of a given right of that person's intention to transfer that right to the assignee. *See Wolters Village Management Co. v. Merchants & Planters National Bank,* 223 F.2d 793, 798 (5th Cir.1955). Assignments, by their nature, are not limited to the assignment of contractual rights.

Many statutory entitlements can be assigned so long as the statutory scheme does not by its own terms prohibit assignment. *See, e.g., In re Vazquez, Guerrero, and Compton,* 788 F.2d 130, 134 (3rd Cir. 1986) (noting that a reimbursement authorization in favor of a state by a person receiving Supplemental Social Security benefits qualifies as a common law assignment, citing the Restatement); *cf.* RESTATEMENT (SECOND) OF CONTRACTS, § 317,

Comment e (American Law Institute, 1981) (stating that this section of the Restatement applies to assignments of statutory rights only by analogy and that the assignment of such rights may be limited or prohibited by statute). *See, e.g., Notarian v. Plantation AMC Jeep. Inc.,* 567 So.2d 1034 (Fla.App. 4th Dist., 1990); *Black v. First Interstate Bank of Fort Dodge, Iowa,* 439 N.W.2d 647, 650–51 (Iowa 1989) (in absence of legislation to the contrary, statutory right will be deemed assignable); *Larabee v. Potvin Lumber Co., Inc.,* 390 Mass. 636, 459 N.E.2d 93, 96 (1983) (tort action for damage to property held to be assignable, citing authorities dating back to 1824); *Luker v. Arnold,* 843 S.W.2d 108, 120 (Tex.App.—Ft. Worth 1992, no writ) (discussing DTPA cause of action which was validly assigned); *cf. Lingel v. Olbin,* 198 Ariz. 249, 8 P.3d 1163, 1167 (App.Div. 2, 2000) (personal injury actions held generally not assignable as against public policy, in order to discourage champerty); *see also Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.,* 271 F.3d 1081, 1088 (Fed.Cir.2001) (patent rights are an exception to the common law rule that contractual rights are freely assignable); *Insurance Co. of the West. v. United States,* 243 F.3d 1367, 1374 (Fed. Cir.2001) (claims arising under Federal Torts Claims Act are assignable and waiver of sovereign immunity applies equally in favor of the assignee of such claims); *National Enterprises, Inc. v. Barnes,* 201 F.3d 331, 334 (4th Cir.2000) (state law rules would be applied to assignee from the RTC, "because no federal policy presented a sufficient justification for a federal common law rule of decision"); *City of Hope Nat. Medical Ctr. v. Healthplus, Inc.,* 156 F.3d 223, 227 (1st Cir.1998) (health care provider could sue an ERISA-regulated health plan as assignee of the covered plan beneficiary, citing, *inter alia,*

Supreme Court decision permitting assignees to bring Miller Act claims).

The foregoing principles and rules of decision satisfy the court that the Restatement provides the appropriate matrix for evaluating whether the assignment in this case should be enforceable, coupled with an examination of the statute under which the right to be assigned arises to determine whether the statutory scheme suggests a reason for not permitting assignment.

The right sought to be assigned in this case arises primarily by implication. Section 348(f)(1)(A) does not expressly direct the chapter 13 trustee to disburse money he may have on account to the debtor upon the conversion of the case. Instead, the statute defines what must be turned over to the chapter 7 trustee, and excludes funds attributable to wage deductions by defining the property to be turned over as whatever was property of the bankruptcy estate as of the date the petition was filed. 11 U.S.C. § 348(f)(1)(A). Similarly, section 704(9), which directs the chapter 13 trustee (by cross-reference from section 1302(b)(1)) to prepare a final report and accounting of his administration of the case, does not expressly direct the trustee to disburse monies remaining on hand to the debtor. The duty is clearly there by implication, from a reading of section 348(f)(1), but the statute is otherwise entirely silent regarding precisely how this disbursement is to be made. The Bankruptcy Code is thus silent regarding a debtor's right to assign to another what is otherwise owed to the debtor by the chapter 13 trustee once the case has been converted. Clearly the statute does not explicitly bar the debtor's assigning that right, and that is what one would normally look for when one is considering a person's right to assign an entitlement that arises by statute. *See Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 271 F.3d 1081, 1088 (Fed.Cir.2001) (patent rights not assignable by statute); *Insurance Co. of the West v. United States*, 243 F.3d 1367, 1374 (Fed.Cir.2001) (Federal Torts Claims Act claims are assignable); *National Enterprises, Inc. v. Barnes*, 201 F.3d 331, 334 (4th Cir.2000) (no federal policy to justify not using ordinary common law rules with regard to assignee of claim from the RTC); *City of Hope Nat. Medical Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 227 (1st Cir.1998) (assignee permitted to sue an ERISA-regulated health plan; assignees permitted to bring Miller Act claims). With the Code's silence, the presumption is that the normal rules regarding the enforceability of valid assignments apply.

The Restatement adds that an assignment should not be enforceable if it violates public policy or if it "materially increase[s] the burden or risk imposed on the obligor." Restatement (Second) Contracts § 317(2)(a). The trustee's objections suggest his belief that one or the other of these factors is present here. The court is not quite so concerned, however.

As the assignment in question is for the purpose of paying the debtor's attorney for *prospective* services, the trustee is not called upon to pay any claim that needs first to be allowed by the court.[9] What is more, the trustee is no longer in the "claims" business at all once the case is

---

**9.** Again, one need only recall that chapter 13 debtors' attorneys have may have an allowed or allowable claim for services rendered during the chapter 13 proceeding, and that claim is subject to review and authorization by the court. 11 U.S.C. § 330(a)(4)(B). Fees for services performed on behalf of the debtor in a chapter 7 case, by contrast, are not subject to prior court authorization (though they may be subject to scrutiny after the fact, at the discretion of either the court or a party in interest pursuant to section 329).

converted—that duty is transferred to the chapter 7 trustee, so the trustee has neither the statutory power nor the statutory duty to question whether the amount being paid to the attorney is "excessive." Thus, honoring the assignment will not violate other provisions of the Bankruptcy Code, nor does it violate any particular public policy about paying lawyers whose fees have not yet been approved, because chapter 7 debtor's attorneys' fees are never pre-approved. They may be examined after the fact, by virtue of section 329, but the duty to conduct that examination is placed on the chapter 7 trustee, not the chapter 13 trustee.

The trustee is concerned that the accounting procedures that apply to chapter 13 trustees do not permit a trustee to make anyone other than the debtor the payee of funds that constitute a refund of the debtor's property, raising the possibility of exposing the trustee to running afoul of United States Trustee rules or policies, and perhaps threatening the trustee with having to defend lawsuits filed by debtors who dispute the payment. Internal accounting procedures do not form a sufficient basis for prohibiting assignment of benefits, however. Inconvenience falls well short of the sort of policy concerns that are normally raised as justification for not honoring assignments. *See, e.g., Lingel v. Olbin*, 198 Ariz. 249, 8 P.3d 1163, 1167 (App.Div. 2, 2000) (personal injury actions held generally not assignable as against public policy, in order to discourage champerty). Appropriate notations on the check, accompanied by appropriate notations on the final report filed by the chapter 13 trustee will be sufficient to notify anyone—the United States Trustee,

other creditors, or even the debtors themselves—of exactly where the money has gone. If the assignment is signed by the debtor, and is appropriately acknowledged before a notary who independently verifies both the identity and the signature of the debtors (and confirms that they indeed intend by their signature to assign funds to their attorneys), then the chapter 13 trustee has in hand all the documentation he or she needs to withstand scrutiny by the United States Trustee, or challenges by either creditors or the debtors in the case. *Cf. Kennard v. McCray*, 648 S.W.2d 743, 746 (Tex.App.Tyler 1983) (holding that lack of consideration is purely a matter between the assignor and assignee since obligor's payment to the assignee discharged obligor's duties under the contract). Public policy strongly supports paying attorneys for their services, and overrides whatever undisclosed policy concerns drive the United States Trustee's accounting procedures.[10]

■ The trustee also suggests that the procedure could lead to serious overreaching on the part of debtors' attorneys, who might use the process to obtain an excessive payment for post-conversion services, and that there ought to be regulation to prevent such excesses. The court shares the chapter 13 trustee's concern that the bankruptcy system never become a haven for nefarious attorneys who might mislead their clients into overpaying them for services to be rendered. The Bankruptcy Code itself, however, affords ample tools to both the court and court-appointed officers to examine such payments, and to order a disgorgement if needed. Section 329 permits examination after the fact of any compensation paid or agreed to be

---

**10.** The court assumes that the United States Trustee's concerns have primarily to do with assuring the integrity of the operations and financial accountability of the Chapter 13 Trustee's office. Adequate recordkeeping along the lines suggested in this opinion should more than satisfy these concerns.

paid for services rendered or to be rendered or in connection with a case—language clearly broad enough to encompass payment via assignment for services to be rendered post-conversion. 11 U.S.C. § 329(a). The statute says that the court may order disgorgement if the compensation exceeds the reasonable value of services rendered, with the resulting monies being paid back to the debtor. 11 U.S.C. § 329(b)(2). The important point is this: it is the chapter 7 trustee, not the chapter 13 trustee, who has the primary duty of examining the compensation paid.[11] The chapter 13 trustee is off the hook, as it were. As there are already adequate mechanisms in place for policing overreaching, this particular public policy concern is adequately addressed without the necessity of prohibiting assignment.[12]

While the public policy considerations raised by the chapter 13 trustee are certainly legitimate concerns, they do not rise to the level normally considered necessary to override the long-standing common law right to freely assign benefits to another, when there are no contractual or statutory prohibitions on such assignments. *See, e.g., Lingel v. Olbin*, 198 Ariz. 249, 8 P.3d 1163, 1167 (App.Div. 2, 2000) (personal injury actions held not assignable in order to discourage champerty); *Rhone Poulenc Agro. S.A. v. DeKalb Genetics Corp.*, 271 F.3d 1081, 1088 (Fed.Cir.2001) (patent rights are a statutory exception to the common law rule that contractual rights are freely assignable).

## Conclusion

For the foregoing reasons, the court grants the debtor's motion, though with some conditions. Debtors may assign all or a portion of the monies on hand with the chapter 13 trustee to their attorney for the purpose of paying for post-conversion services. To accomplish such assignments, however, any assignment to be effective must be in writing, must clearly state the amount of money being disbursed, must clearly disclose that the disbursement is for attorneys' fees for post-conversion services, and must be signed by the debtor or debtors, and acknowledged before a notary. The attorney must in turn file a new disclosure of compensation in the chapter 7 proceeding, disclosing fees received by assignment for services rendered in the chapter 7 case. Any such fees are subject to review by the chapter 7 trustee, by the court, and by any other party in interest (including the United States Trustee), and any such entity has standing to seek review of such fees and, if appropriate, seek disgorgement pursuant to section 329 of the Code. A debtor may, if she so chooses, assign to her attorney only a portion of the monies due to her, in which event the trustee will cut two checks, one payable to the lawyer and one payable to the debtor.

The court leaves to another day questions about assigning monies to pay the lawyer's fees incurred in the chapter 13

---

**11.** The chapter 13 trustee's final report is a public record, available to the chapter 7 trustee, who will clearly be able to see, upon examination of the report, just how much was paid to the debtor's lawyers. The United States Trustee also has the ability to audit these reports, and so to monitor whether particular lawyers or firms are attempting to abuse their positive *vis-a-vis* their clients. Of course, state bar rules prohibit overreaching and overcharging as well. With all of this scrutiny, only the most foolhardy lawyer would dare (at least in this district) to try to take unfair advantage of their clients using this procedure.

**12.** Indeed, when one thinks about it, the potential for overreaching is potentially greater in the situation in which the attorney forces the debtor to make an excessive payment directly. In that situation, there will be no third party who sees how much was charged, and no written documentation of the charge.

case, when a case is dismissed or converted.

So Ordered.